UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            :

UNITED STATES OF AMERICA           :

  - against -                           :          18 Cr. 36 (JPO)

DAVID MIDDENDORF, *et al.*,      :

          Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


**DEFENDANT DAVID MIDDENDORF'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF HIS MOTION TO DISMISS
COUNTS TWO, THREE, FOUR AND FIVE OF THE INDICTMENT**


PETRILLO KLEIN & BOXER LLP
Nelson A. Boxer
Amy Lester
Alexandra R. Clark
655 Third Avenue
New York, NY 10017

BRUCH HANNA LLP
Gregory S. Bruch
Khiran Sidhu (*pro hac vice*)
1099 New York Ave., NW
Washington, DC  20001

*Attorneys for David Middendorf*

Defendant David Middendorf respectfully submits this Reply Memorandum of Law in further support of his motion to dismiss Counts Two, Three, Four and Five (collectively, the "Wire Fraud Counts") of the Indictment.

## I.     The Government Is Not Entitled to Rely on Notice Pleading

In its opposition brief, the government does not directly address any of the arguments raised in Mr. Middendorf's motion to dismiss. Instead, it argues that because the allegations in the Indictment "track the language of the relevant statutes," and thereby provide notice of the charges, the Wire Fraud Counts "easily withstand the defendants' motions to dismiss." Gov't Opp. Br. at 24, 25.

The government is wrong. In many cases, "tracking" statutory language is insufficient, and precedents where district courts dismissed, and Circuit courts affirmed the dismissal of, criminal charges pursuant to a pre-trial motion based upon legal infirmities are too numerous to list.[1] In fact, when a defendant moves prior to trial, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), to dismiss all or a portion of an indictment for failure to state an offense, "a defendant . . . is entitled to a more exacting review of the indictment." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (citing *United States v. Goodwin*, 141 F.3d 394, 401 (2d Cir. 1997)). Dismissal of a charge is warranted where, as here, the indictment "fails to allege a crime within the terms of the applicable statute." *United States v. Aleynikov*, 676 F.3d 71, 75-76 (2d Cir. 2012); *see also United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) ("[F]or

---

[1] *See, e.g., Skilling v. United States,* 561 U.S. 358, 401-15 (2010); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000); *United States v. Schiff,* 602 F.3d 152, 161 (3d Cir. 2010); *United States v. George*, 223 F. Supp. 3d 159, 162-63 (S.D.N.Y. 2016); *United States v. Heicklen*, 858 F. Supp. 2d 256, 261-62 (S.D.N.Y. 2012); *United States v. Thompson*, 141 F. Supp. 3d 188, 193-95 (E.D.N.Y. 2015); *United States v. Alkaabi*, 223 F. Supp. 2d 583, 587 (D.N.J. 2002); *United States v. Webb*, 24 F. Supp. 3d 432, 435 (M.D. Pa. 2014); *United States v. Jackson*, No. 16 Cr. 31 (GMG), 2017 WL 1129941, at *9 (March 24, 2017 N.D. W.Va.).

purposes of Rule 12(b)(2), a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.").

## II. The Wire Fraud Counts Fail to Allege that Mr. Middendorf Engaged in a Scheme to Defraud the PCAOB

The government's omnibus opposition brief ignores Mr. Middendorf's separately-briefed argument that the facts alleged in the Indictment are not within the scope of the wire fraud statute because it does not allege that Mr. Middendorf made a material misrepresentation, either affirmatively or by omission, to the Public Company Accounting Oversight Board ("PCAOB") in breach of a duty as part of the alleged scheme to defraud the PCAOB.

The Indictment alleges only that current and former PCAOB employees breached a duty they owed to the PCAOB by embezzling confidential information from the PCAOB and failing to disclose their breach. The Indictment does not allege that Mr. Middendorf embezzled confidential information from the PCAOB, breached a duty or made a misrepresentation to the PCAOB, or was aware of the PCAOB employees' breach of their duty to the PCAOB. The government attempts to elide these shortcomings in the Indictment by asserting that the defendants' "fraudulent intent is readily inferable from the nature of the alleged scheme." Gov. Opp. Br. at 25. But as *Carpenter v. United States*, 484 U.S. 19, 27-28 (1987), demonstrates, the government must prove a fraudulent misrepresentation or omission as part of the scheme to defraud, neither of which is alleged nor is apparent from the allegations in the Indictment. *See also* Sand, Federal Jury Instructions, Instr. 44-4, at 44-11 ("It is now well-accepted that a scheme to defraud must include some false statement, representation or promise.") (citing, *inter alia*, *United States v. DiNome*, 86 F.3d 277, 283 n.5 (2d Cir. 1996)).

2

In *Carpenter*, for example, the Supreme Court found that the government proved a fraudulent misrepresentation by omission where the defendant, after agreeing to keep his employer's (the Wall Street Journal's) information confidential, "continued in the employ of the Journal, appropriating its confidential business information for his own use, all the while pretending to perform his duty of safeguarding it," and "told his editors twice about leaks of confidential information . . . demonstrating . . . his deceit as he played the role of a loyal employee." 484 U.S. at 28. *See also United States v. O'Hagan*, 521 U.S. 642, 654 (1997) ("The undisclosed misappropriation of [a company's confidential information], in violation of a fiduciary duty, the Court said in *Carpenter*, constitutes fraud akin to embezzlement."); *United States v. Von Barta*, 635 F.2d 999, 1006-07 (2d Cir. 1980) ("The additional element which frequently transforms a mere fiduciary breach into a criminal offense is a violation of the employee's duty to disclose material information to his employer," and "the employment relationship, by itself, may oblige an employee not to conceal, and in fact *to reveal*, information he has reason to believe is material to the conduct of his employer's business.") (emphasis added); *United States v. Winans*, 612 F. Supp. 827, 844 (S.D.N.Y. 1985) ("The argument that [the defendant's] theft of confidential information was not necessarily a fraud fails *because of the existence of a duty to disclose*.") (emphasis added). In the instant case, by contrast, Mr. Middendorf is not alleged to have owed a duty to the PCAOB to safeguard its confidential, inspections-related information, and is not alleged to have breached a duty to the PCAOB, by misrepresentation or omission.

The government, in support of its contention that the defendants' "fraudulent intent is readily inferable from the nature of the alleged scheme" (Gov. Opp. Br. at 25), cites to *United States v. Martin*, 411 F. Supp. 2d 370, 373 (S.D.N.Y. 2006), a case where the defendants were

3

alleged to have "effectuated a scheme to fix a horse race by giving a racehorse a performance-enhancing substance, and then profit[ing] from their actions by placing bets on that racehorse." *Id.* at 371. The district court held in *Martin* that the indictment fulfilled the "scheme to defraud" element of wire fraud, even though it did not allege an affirmative misrepresentation or breach of duty, because the doping scheme broke the rules of horseracing and as a result was necessarily dishonest. *Id.* at 373. In so holding, the court relied upon a footnote in *United States v. Trapilo*, 130 F.3d 547, 550 n.3 (2d Cir. 1997), which stated that the act of smuggling alcohol across the Canadian border to avoid taxation was inherently deceptive and therefore constituted a scheme to defraud even without any affirmative misrepresentations.

Several courts have rejected the argument that *Trapilo* eliminated the requirement of a misrepresentation or breach of a duty to demonstrate a scheme to defraud, distinguishing *Trapilo* on its facts, which involved international smuggling, uniquely and inherently deceptive conduct. *See Curtis & Assocs. PC v. Law Offices of David M. Bushman Esq.*, 758 F. Supp. 2d 153, 178-79 (E.D.N.Y. 2010) ("[P]laintiffs err to the extent they suggest that *Trapilo* dispenses with the required element of deception which must underlie any 'scheme to defraud' pursuant to the mail and wire fraud statutes."); *A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 501 (S.D.N.Y. 1998) (noting that "smuggl[ing] large quantities of liquor across the Canadian border" was "inherently a dishonest and deceptive act"). Neither *Martin*, nor *Trapilo*, were frauds predicated upon an embezzlement or breach of a fiduciary duty. Here, by contrast, the Indictment expressly relies upon an embezzlement theory. *See, e.g.*, Indictment ¶¶ 97, 99 and 101. Accordingly, as in *Carpenter*, the government must allege an omission in breach of a duty as part of a scheme to defraud.

4

Finally, the government fails to counter Mr. Middendorf's argument that the mere alleged "use" of PCAOB confidential information—separate from the embezzlement itself—cannot serve as a basis for a wire fraud charge. The government asserts that "[w]ith respect to wire fraud schemes based on the embezzlement of confidential information, the crime is not complete when an insider obtains relevant information but when he uses such information for personal gain *or provides it to a third party*," citing only *United States v. Czubinski*, 106 F.3d 1069 (1st Cir. 1997), in support. Gov. Opp. Br. at 26-27 (emphasis added). In *Czubinski*, the First Circuit reversed the defendant's wire fraud and computer fraud convictions on the basis that his unauthorized browsing of confidential taxpayer information on an IRS database, "although certainly inappropriate conduct, [could not], without more, sustain [a] federal felony conviction." 106 F.3d at 1071. The Court held that, "without evidence that Czubinski used or intended to use the taxpayer information (beyond mere browsing), an intent to deprive [the IRS of its intangible property interest in the information] cannot be proven, and, *a fortiori*, a scheme to defraud is not shown." *Id.* at 1075.

*Czubinski* presented the scenario where a defendant breached a duty to his employer by accessing confidential information without authorization but did not "use" that information. Critically, *Czubinski* does not address the circumstance presented by the instant prosecution, where the Indictment does not allege that Mr. Middendorf breached a duty and only alleges that he "used" information acquired by others in breach of their duty. *Czubinski* does not support the government's contention that a wire fraud predicated on an act of embezzlement necessarily extends to only the "use" of the embezzled information. The government has failed to rebut Mr. Middendorf's argument that the alleged use of property that has been embezzled by someone else cannot alone make out a wire fraud.

The government's formulaic recitation that the Indictment tracks the nouns and verbs of the wire fraud statute—it alleges that the defendants "'willfully and knowingly . . . participated in a scheme to defraud' the PCAOB of property and transmitted information by wire," Gov. Opp. Br. at 25—is beside the point. Because the Wire Fraud Counts fail to allege that Mr. Middendorf made a material misrepresentation or omission to the PCAOB in breach of his duty as part of the alleged fraudulent scheme, it fails to state wire fraud offenses as to Mr. Middendorf, and the Wire Fraud Counts should be dismissed against him.

### III. The Indictment's Allegations Are Insufficient to Support an Aiding and Abetting Theory as to Mr. Middendorf for Counts Three, Four and Five

The government argues that the Indictment pleads factual allegations sufficient to support a theory of aiding and abetting liability against Mr. Middendorf. According to the government, "Middendorf, Whittle, and Britt encouraged Sweet first to disclose confidential PCAOB information and then to obtain additional confidential PCAOB information in violation of the duties of confidentiality of Holder, Wada and other PCAOB colleagues." Gov. Opp. Br. at 25-26.

The government's characterization of the Indictment's allegations is questionable. It cites to over a third of the substantive paragraphs in the Indictment (¶¶ 32-58, 63-66, 73-78, 80-83) in support of this assertion, the overwhelming majority of which do not even mention Middendorf, Whittle or Britt, let alone support the statement that these defendants encouraged Sweet to obtain or disclose information. For example, there is no allegation in the Indictment that any defendant asked Sweet to take a PCAOB inspection list when he left the PCAOB in 2015. Likewise, there is no allegation that anyone at KPMG asked Sweet to obtain a PCAOB inspection list from Holder or from Wada.

6

Because the Indictment does not allege that Mr. Middendorf had advance knowledge of or actual involvement in the acts of embezzlement alleged in the Indictment, let alone assisted any PCAOB employee in breaching his or her duty owed to the PCAOB, he could not have aided and abetted the embezzlement, and the government's unpled assertion that he "encouraged" Sweet to embezzle information from the PCAOB is irrelevant.  Counts Three, Four and Five should be dismissed as to Mr. Middendorf.

### IV.     Count Two Should be Dismissed for Failure to State an Offense

The Government argues that Count Two, conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, is sufficiently pled because the Indictment tracks the language of Section 1349 and because of the "abundance of factual detail set forth in the Indictment."  Gov. Opp. Br. at 26.  The Indictment fails to allege a wire fraud conspiracy for many of the same reasons that it fails to allege aiding and abetting liability:  it does not allege that Mr. Middendorf entered into an agreement with anyone else to embezzle confidential information from the PCAOB.

## CONCLUSION

For the foregoing reasons, and those set forth in Mr. Middendorf's moving brief, the Court should dismiss Counts Two, Three, Four and Five against Mr. Middendorf.

Dated: May 24, 2018
      New York, New York

Respectfully submitted,

PETRILLO KLEIN & BOXER LLP

By: /s/ Nelson A. Boxer
Nelson A. Boxer
Amy Lester
Alexandra R. Clark
655 Third Avenue
New York, NY 10017
Telephone: (212) 370-0330
nboxer@pkbllp.com

BRUCH HANNA LLP
Gregory S. Bruch
Khiran Sidhu (*pro hac vice*)
1099 New York Ave., NW
Washington, DC 20001
Telephone: (202) 969-1630
gbruch@bruch-hanna.com

*Attorneys for David Middendorf*

8