# Exhibit A

# PETRILLO KLEIN & BOXER LLP

655 Third Avenue
22nd Floor
New York, NY 10017
Telephone: (212) 370-0330
www.pkbllp.com

Nelson A. Boxer
Direct Dial: (212) 370-0338
Cell:        (917) 273-2693
nboxer@pkbllp.com

February 5, 2018

**By Overnight and Electronic Mail**

Amanda K. Kramer
Rebecca G. Mermelstein
Jessica Greenwood
Assistant United States Attorneys
U.S. Attorney's Office
Southern District of New York
1 St. Andrew's Plaza
New York, NY  10007

> Re:    *United States v. David Middendorf, et al.*, 18 Cr. 36 (JPO)

Dear AUSAs Kramer, Mermelstein, and Greenwood:

On behalf of our client David Middendorf (the "defendant"), we request the following particulars[1] regarding the indicated paragraphs of the Indictment (ECF 1):

1.      ¶ 3, identify the "relevant accounting standards" and "limited exceptions."

2.      ¶ 4, identify the specific provision that is meant by "created by SOX."

3.      ¶ 9, identify the specific provision that is meant by "[a]s required by SOX."

4.      ¶ 10, identify the specific provision(s) that is/are meant by "directly oversees," "maintains the authority," and "maintains the responsibility."

---

[1] The particulars sought herein are necessary for the defendant to adequately prepare his defense, to avoid unfair surprise during trial, and to protect the defendant from a second prosecution for an inadequately described offense.  *See United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

February 5, 2018
Page 2

5.      ¶ 11, identify the specific provision that is meant by "[p]ursuant to SOX" and identify all "various consequences."

6.      ¶ 12, identify the specific provision(s) that is/are referred to as "SOX commands" and "SOX also provides."

7.      ¶ 18, identify the "Data Firm."

8.      ¶ 19, identify "the Vice Chair of Audit" for all times relevant to the Indictment.

9.      ¶ 26, identify "KPMG's Chief Auditor" for all times relevant to the Indictment.

10.     ¶ 27, identify the "current and former PCAOB employees."

11.     ¶ 28, identify "others" and when and how the named defendants and "others" "initiated efforts to recruit Brian Sweet."

12.     ¶ 29, identify "MIDDENDORF'S supervisor, the Vice Chair of Audit," and "others."

13.     ¶ 30, identify the "other documents" taken by Sweet.

14.     ¶ 32, identify the "others" in attendance and the "particular Issuer."

15.     ¶ 33, identify whether the "separate conversation" occurred in person, during a call, or by means of an electronic communication.

16.     ¶ 34, identify the "others" who attended the "second welcome lunch" and the "KPMG engagements" on the "2015 List."

17.     ¶ 40, identify on what date and at what time Sweet "shar[ed] the 2015 List with DAVID MIDDENDORF," and whether it occurred in person, during a call, or by means of an electronic communication; identify the "one KPMG engagement partner," "the partner's engagement," "certain KPMG partners," and "certain engagements."

18.     ¶ 41, identify on what date(s) "[i]n May and June of 2015," and at what time(s) Sweet "shared confidential information about the 2015 List with DAVID MIDDENDORF," and whether that occurred in person, during a call, or by means of an electronic communication; identify the "others" and the "engagement partners."

February 5, 2018
Page 3

19.   ¶ 42, identify on what date(s) "[t]hroughout 2015," and at what
      time(s) Sweet "continued to share confidential PCAOB
      information with DAVID MIDDENDORF," and whether that
      occurred in person, during a call, or by means of an electronic
      communication; identify "other KPMG personnel" and "PCAOB
      personnel";

      a.  identify "Partner-1," "the issuers in question," and "others";
      b.  identify "other KPMG personnel," "Swiss Bank-1," and
          "Japanese Bank-1"; and
      c.  identify "others" and "German Bank."

20.   ¶ 44, identify on what date and at what time the indicated
      communication took place, and whether it occurred in person,
      during a call, or by means of an electronic communication.

21.   ¶ 45, identify "Partner-2."

22.   ¶ 46, identify the "others" who "met with the Data Firm," and the
      "other information."

23.   ¶ 48, identify "the head of the group."

24.   ¶ 50,

      a.  identify the "other KPMG personnel";
      b.  identify the "particular audit";
      c.  identify the "KPMG inspection"; and
      d.  identify the "ongoing KPMG inspection" and the "PCAOB IT
          inspector."

25.   ¶ 51, identify the individuals who participated in the referenced
      interview.

26.   ¶ 52, identify "Issuer-1."

27.   ¶ 57, identify the "particular PCAOB inspector."

28.   ¶ 58,

      a.  identify the "specific Issuer subject to inspection" and the
          "relevant KPMG personnel"; and
      b.  identify the "particular Issuer" and the members of the
          "engagement team."

29.   ¶ 59, identify the "other matters" and the "Chief Accountant."

February 5, 2018
Page 4

30.     ¶ 60, identify "KPMG's CEO," "KPMG's Vice Chair of Audit," and the "other members of OCA."

31.     ¶ 61, identify "KPMG personnel."

32.     ¶ 62, identify "other PCAOB employees" and "others";

   a.  identify "PCAOB's head of inspections";
   b.  identify "another PCAOB employee"; and
   c.  identify "a second PCAOB employee."

33.     ¶ 63, identify the "12 Issuers" on the "2016 List."

34.     ¶ 67, identify the "small group of individuals" who served as the "Re-reviewers," and the "engagement partners for audits on the 2016 List that were not subject to the ALLL monitoring program."

35.     ¶ 68,

   a.  identify "Partner-3" and the "other members of Partner-3's team."

36.     ¶ 69, identify "all KPMG partners whose audits were part of the ALLL monitoring program" and "others."

37.     ¶ 71, identify "Partner-4" and "Issuer-2."

38.     ¶ 72, identify the "applicable accounting standards," "certain limited circumstances," "significant problems," and "additional audit work";

   a.  identify "others";
   c.  identify the "Team Leader";
   d.  identify "Issuer-3" and the "certain instances" in which "2016, rather than 2015, information" was used, the "KPMG personnel," and the "additional substantive audit work"; and
   e.  identify "Issuer-4," the "engagement team," and the "KPMG personnel."

39.     ¶ 73, identify the "list of Issuers" on the "2017 Preliminary List."

40.     ¶ 75, identify the "certain partners" and "additional personnel."

February 5, 2018
Page 5

41.     ¶ 77, identify on what date and at what time the indicated communication took place, and whether it occurred in person, during a call, or by means of an electronic communication.

42.     ¶ 78, identify when and how each named defendant participated "in recruiting or assigning additional KPMG personnel," and identify who was recruited or assigned.

43.     ¶ 81, identify the "KPMG clients" on the "2017 Final List," the "areas of focus for each engagement," and "other information."

44.     ¶ 83, identify on what date(s) and at what time(s) "Sweet discussed the 2017 Final List" with each named defendant and whether that occurred in person, during a call, or by means of an electronic communication; and identify the "others";

        c.   identify the "engagement partners"; and
        e.   identify the "particular engagement."

45.     ¶ 84, identify "Partner-5," "Partner-5's engagements," "Partner-5's supervisor," "KPMG's General Counsel," and the "members of KPMG's Office of the General Counsel."

46.     ¶ 89, identify the "specified college football team" and the "designated KPMG conference call number."

47.     ¶ 90, identify the means by which the SEC was defrauded.

48.     ¶ 91, identify the material, fraudulent misrepresentations made by each of the named defendants, the manner in which the SEC "utilized" the "results" of "PCAOB inspection outcomes," and the "regulatory and enforcement functions" of the SEC.

49.     Identify the date on which each named defendant became a member of the charged conspiracies (Counts One and Two).

50.     Identify the participants in the alleged conspiracies (Counts One and Two), including the names of any unindicted co-conspirators.

51.     Identify any co-conspirator(s) who withdrew from the alleged conspiracies and the date(s) of the withdrawal (Counts One and Two).

February 5, 2018
Page 6

52.    ¶ 92,

    d.  identify the "engagements at issue," the dates of the
          "Documentation Period" for each, the "others," the "valuable
          confidential PCAOB information" and "certain of KPMG's
          engagements";
    e.  identify the "various audit files";
    f.  identify the "valuable confidential PCAOB information" and
          "KPMG's engagements";
    g.  identify the "valuable confidential PCAOB information" and
          "KPMG's engagements";
    h.  identify "others" and the means by which the named
          defendants and "others" "acquired . . . valuable confidential
          PCAOB information," and "KPMG's engagements."

53.    ¶ 95, identify the nature of the fraudulent "scheme" and the
identity of the victim(s) of the scheme.

54.    ¶ 95, identify the "money and property" at issue.

55.    ¶ 95, identify the material, fraudulent misrepresentations made by
the defendants.

56.    ¶ 95, identify the wire transmissions contemplated by the
defendants in furtherance of the conspiracy.

57.    ¶ 97, identify the material, fraudulent misrepresentations made by
the defendants.

58.    ¶ 97, identify the specific wire transmissions that the government
intends to prove at trial.

59.    ¶ 97, identify the "duties of confidentiality and other duties"
breached and the "former or current PCAOB employees."

60.    ¶ 99, identify the material, fraudulent misrepresentations made by
the defendants.

61.    ¶ 99, identify the specific wire transmissions that the government
intends to prove at trial.

62.    ¶ 99, identify the "duties of confidentiality and other duties"
breached and the "former or current PCAOB employees."

63.    ¶ 101, identify the material, fraudulent misrepresentations made by
the defendants.

February 5, 2018
Page 7

64.     ¶ 101, identify the specific wire transmissions that the government intends to prove at trial.

65.     ¶ 101, identify the "duties of confidentiality and other duties" breached and the "former or current PCAOB employees."

66.     ¶ 102, identify the "property, real and personal, that constitutes proceeds traceable to the commission of said offenses" that each named defendant "personally obtained" and identify the "sum of money . . . representing the amount of proceeds traceable to the commission of said offense[s]."

67.     ¶ 103, identify any "other property" that the government may seek to forfeit.

In addition, we hereby make demand for all information in the possession, custody or control of the government that is required to be disclosed under the Fifth and Sixth Amendments to the United States Constitution (*see, e.g., Brady v. Maryland*, 373 U.S. 83 (1963), *United States v. Bagley*, 473 U.S. 667 (1985), *United States v. Agurs*, 427 U.S. 97 (1976), *Giglio v. United States*, 405 U.S. 150 (1972), *Kyles v. Whitley*, 514 U.S. 419 (1995)), and Rules 12(b)(4)(B), 16(a), and 26.2 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."), including the following:

a.      Mr. Middendorf's Statements

Please provide all information regarding Mr. Middendorf's statements, whether oral, written or recorded.  *See* Fed. R. Crim. P. 16(a)(1)(A) and (B).

b.      Statements of Mr. Middendorf's Co-Defendants

Please provide all information regarding any oral or written statement (including, but not limited to, notes of any such statement) to the government and/or to counsel for KPMG and in the government's possession, by each of Mr. Middendorf's co-defendants, so Mr. Middendorf can assert his rights pursuant to *Bruton v. United States*, 391 U.S. 123 (1968), and its progeny, if necessary.

c.      Documents and Objects

Please provide any and all books, papers, data, documents and tangible objects which are material to the preparation of the defense or are intended for use by the government as evidence in its case in chief or were obtained from or belong to Mr. Middendorf, including, but not limited to, all documents referenced in the Indictment (*see, e.g.,* ¶¶ 30, 34-43, 45-50, 52, 53, 56, 57, 62-77, 79-83, 85-87).  *See* Fed. R. Crim. P. 16(a)(1)(E).

February 5, 2018
Page 8

      d.        Reports, Examinations, and Tests

Please provide all reports, examinations, and tests done by or on behalf of the government.  *See* Fed. R. Crim. P. 16(a)(1)(F).

      e.        Expert Witnesses

If the government intends to call any expert witnesses pursuant to Fed. R. Evid. 702, 703, or 705, please disclose each expert's name, address, education, training, and qualifications, as well as written summaries of testimony which the government intends to use, including each witness's opinions and the basis and reasons for each such opinion.  *See* Fed. R. Crim. P. 16(a)(1)(G).

      f.        Search Warrants and Wiretaps

Please provide applications for wiretaps, pen registers, search warrants and any other search or surveillance, including accompanying affidavits of probable cause prepared by any government agent, as well as all evidence obtained as a consequence of all searches and surveillance.  *See* Fed. R. Crim. P. 12(b)(4)(B).

      g.        Evidence Pursuant to *Kyles v. Whitley*, 514 U.S. 419 (1995)

Please provide any material or information tending to undermine or cast any doubt concerning (1) the probative value of any physical evidence which the government intends to use at trial, or (2) the good faith or thoroughness of the investigation conducted by any law enforcement personnel which contributed to this indictment, or law enforcement reliance on unreliable informants or information.

      h.        Undercover Law Enforcement

Please provide all proposals related to the authorization of the use of undercover law enforcement personnel and any subsequent requests for re-authorization.

      i.        Evidence Pursuant to Residual Hearsay Exceptions

Please provide all evidence that the government intends to introduce at trial pursuant to the residual hearsay exceptions set forth in Federal Rules of Evidence ("Fed. R. Evid.") 803 and 804.

      j.        Evidence Pursuant to Fed. R. Evid. 404(b)

Please provide notice of any intention by the government to introduce evidence in its case in chief at trial pursuant to Fed. R. Evid. 404(b), including a

February 5, 2018
Page 9

description of such proposed evidence to a degree that fairly apprises Mr.
Middendorf and which is sufficiently clear to permit the pretrial resolution of the
issue of its admissibility.

        k.        Any Exculpatory or Impeachment Evidence

Please provide all documents, statements, agents' reports, and tangible
evidence favorable to Mr. Middendorf on the issue of guilt and/or which affects the
credibility of the government's case, any government witness, or Mr. Middendorf's
participation in any of the charges in the Indictment. Impeachment as well as
exculpatory evidence falls within *Brady*'s definition of evidence favorable to the
accused. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *United States v.
Agurs*, 427 U.S. 97, 103-04 (1976). This request includes, but is not limited to, the
following:

      (i)      Any and all information tending to show that Mr. Middendorf did
not enter into and engage in a conspiracy to defraud the United
States, conspiracy to commit wire fraud, or wire fraud;

      (ii)     Any electronic, written (including notes) or oral statement, whether
or not reduced to writing, made by any person (including, but not
limited to, information proffered by counsel) which in any way
contradicts or is inconsistent with or different from, any statement
made by a prosecution witness or a person alleged to be a participant
in the conduct charged in the Indictment;

      (iii)    Any electronic, written (including notes) or oral statements, whether
or not reduced to writing, made by any person (including, but not
limited to, information proffered by counsel) to the effect that the
conduct alleged in the Indictment was not understood to be unlawful
at the time it took place;

      (iv)    Any statements, including oral or written statements by witnesses
with information relating to the alleged charges in the Indictment
that fail to mention Mr. Middendorf or fail to make any
incriminating statement with respect to Mr. Middendorf; and

      (v)     The name and last known address of any witness who made an
arguably exculpatory or favorable statement concerning Mr.
Middendorf or his participation in the charged offenses. *See Jones v.
Jago*, 575 F.2d 1164, 1168 (6th Cir. 1978).

        l.        Perception, Recollection, Etc.

Please provide any evidence, including any medical or psychiatric report or
evaluation, tending to show that any prospective witness' ability to perceive,

February 5, 2018
Page 10

remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic. *See United States v. Strifler*, 851 F.2d 1197 (9th Cir. 1988); *Chavis v. North Carolina*, 637 F.2d 213 (4th Cir. 1980).

> m.       Witness Statements

Please provide the Jencks Act statements of government witnesses, so that Mr. Middendorf may properly prepare for trial and avoid any delay of trial in the event that later disclosure jeopardizes his right to confrontation and a fair trial, as guaranteed by the United States Constitution.  Specifically, Mr. Middendorf seeks immediate disclosure of:

> (i)      The grand jury testimony of all witnesses who will testify in the government's case in chief.  18 U.S.C. § 3500(e)(3).

> (ii)     Any written notes (including rough notes) taken during all witness interviews by the government, including all notes taken during or regarding conversations with the witnesses' lawyers. 18 U.S.C. § 3500, Fed. R. Crim. P. 26.2, *Jencks v. United States*, 353 U.S. 657 (1957).

> (iii)    All text, instant and email messages, and any other written communications between the aforementioned witnesses and agents. Fed. R. Crim. P. 26.2; *United States v. Suarez*, No. 09-cr-932 (JLL), 2010 WL 4226524, at *4-*5 (D.N.J. Oct. 12, 2010).

> (iv)     Transcripts from any depositions or other testimony given by any government witness in connection with any other investigation or proceeding or litigation.

> (v)      Any memos or writings reflecting explanations concerning the discarding or destruction of notes of statements of any prospective government witness, whether considered by the government to be advertent or inadvertent.

> (vi)     Any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, any evidence that a witness has made a statement favorable to the defendant, and any evidence regarding a witness's character for truthfulness or untruthfulness.  *See* Fed. R. Evid. 608, 609, and 613; *Brady*, 373 U.S. 83.

> (vii)    Any evidence that any witness was or is under investigation by federal, state, or local authorities for any criminal conduct.  *United States v. Chitty*, 760 F.2d 425 (2d Cir. 1985).

February 5, 2018
Page 11

     (viii)    Any evidence concerning any possible motive of any witness in offering statements or testimony, including the existence and substance of any payments, promises of immunity, leniency, preferential treatment, or any other inducements made to any witness;

     (ix)    Any inconsistent or self-incriminating statements made by any witness;

     (x)    Any information about psychiatric treatment a witness may have undergone; information concerning witness's drug use habits;

     (xi)    Any and all statements made by the witness to local and federal officials with respect to drug distribution and use;

     (xii)    The witness's tax returns for the past ten years—and if no tax returns have been filed, a statement from the IRS indicating that no such documents have been filed; and

     (xiii)    If the witness was not born as a U.S. citizen, all relevant immigration paperwork supporting visa application, permanent resident status, and citizen status as well as a disclosure of any favorable treatment by ICE.

     n.    Notes and Drafts

Please preserve and provide all reports, draft arrest reports, notes, and memos made by any federal, state, and/or local law enforcement agency or witness pertaining to Mr. Middendorf or to the charges alleged in the Indictment, pursuant to Fed. R. Crim. P. 16(a)(1)(B), and 26.2.

February 5, 2018
Page 12

       Please supplement any response to these requests as additional information or material becomes available, pursuant to Fed. R. Crim. P. 16(c).  Additionally, we request that you promptly notify us in writing if you are unable or do not intend to make available any material requested in this letter, providing your reason for not doing so.

                                            Very truly yours,

                                            Nelson A. Boxer
                                            Amy Lester
                                            Alexandra R. Clark
                                            Petrillo Klein & Boxer LLP
                                                     - *and* -
                                            Gregory S. Bruch
                                            Khiran Sidhu
                                            Bruch Hanna LLP

                                            *Counsel for David Middendorf*