UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
UNITED STATES OF AMERICA,                         :
                                                  :
- against -                                       :
                                                  :
DAVID MIDDENDORF,                                 :   18 Cr. 36 (JPO)
DAVID BRITT,                                       :   ECF Case
THOMAS WHITTLE,                                   :
CYNTHIA HOLDER, and                               :
JEFFREY WADA,                                     :
                                                  :
                              Defendants.         :
-------------------------------------------------------- x


### DEFENDANT CYNTHIA HOLDER'S MEMORANDUM OF LAW
### IN SUPPORT OF HER MOTION FOR A BILL OF PARTICULARS

Norman A. Bloch
Emily J. Mathieu
Brian K. Steinwascher
Thompson Hine LLP
335 Madison Avenue
New York, New York 10017
(212) 344-5680
*Attorneys for Defendant Cynthia Holder*

## <u>TABLE OF CONTENTS</u>

POINT I. THE GOVERNMENT SHOULD BE DIRECTED TO  IDENTIFY
UNINDICTED COCONSPIRATORS. .............................................................................1

A.       Introduction...............................................................................................................1

B.       All of the *Nachamie* Factors Support Granting the Requested Order. .................................2

      1.       There are alleged to be two conspiracies with a large number of alleged
coconspirators. ...........................................................................................2

      2.       The alleged conspiracy lasted more than two years and operated in several
states and countries. ..................................................................................5

      3.       Apart from Brian Sweet, the government thus far has not otherwise
identified unindicted coconspirators in its post-Indictment disclosures
to the defense. ...........................................................................................6

      4.       There is a large volume of pretrial discovery to review and analyze. ......................7

      5.       There is no potential danger to coconspirators and the alleged criminal
conduct is non-violent.................................................................................8

      6.       Disclosure would not compromise an ongoing government investigation..............9

POINT II. THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY THE
"OTHER DUTIES" REFERENCED IN COUNTS FOUR AND FIVE OF THE
INDICTMENT.........................................................................................................10

CONCLUSION.......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States v. Barrett*,
　　153 F. Supp. 3d 552 (E.D.N.Y. 2015) .............................................................2, 5, 7

*United States v. Bin Laden*,
　　92 F. Supp. 2d 225 (S.D.N.Y. 2000) ......................................................................2

*United States v. Bortnovsky*,
　　820 F.2d 572 (2d Cir. 1987) .................................................................................10

*United States v. Failla*,
　　No. 93-CR-00294 (CPS), 1993 U.S. Dist. LEXIS 18507
　　(E.D.N.Y. Dec. 21, 1993) ..................................................................................2, 3

*United States v. Falkowitz*,
　　214 F. Supp. 2d 365 (S.D.N.Y. 2002) ................................................................2, 5, 7

*United States v. Kahale*,
　　789 F. Supp. 2d 359 (E.D.N.Y. 2009), *aff'd sub nom.*,
　　*United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012) ............................ *passim*

*United States v. Lino*,
　　No. 00-CR-0632 (WHP), 2000 U.S. Dist. LEXIS 18753
　　(S.D.N.Y. Dec. 29, 2000) ..................................................................................7, 8, 9

*United States v. Nachamie*,
　　91 F. Supp. 2d 565 (S.D.N.Y. 2000) ................................................................ *passim*

*United States v. Oruche*,
　　No. 07-CR-0124 (WHP), 2008 U.S. Dist. LEXIS 16701
　　(S.D.N.Y. Mar. 5, 2008) ................................................................................. *passim*

*United States v. Santiago*,
　　174 F. Supp. 2d 16 (S.D.N.Y. 2001) ......................................................................8

*United States v. Savin*,
　　No. 00-CR-0045 (RWS), 2001 U.S. Dist. LEXIS 2445
　　(S.D.N.Y. Mar. 13, 2001) ................................................................................2, 4

*United States v. Strawberry*,
　　892 F. Supp. 519 (S.D.N.Y. 1995) ........................................................................4

**Rules**

Federal Rules of Criminal Procedure Rule 7(f) ..........................................................................1, 9

Federal Rules of Evidence Rule 801(d)(2)(e) ...............................................................................4

Defendant Cynthia Holder respectfully submits this Memorandum of Law in support of her motion for a bill of particulars as to two items.  In addition,  Ms. Holder joins in, adopts, and incorporates by reference the motions and arguments of her codefendants made and to be made for additional bill of particulars items, disclosure pursuant to *Brady v. Maryland*, and discovery to the extent they apply to her.

## POINT I.

## THE GOVERNMENT SHOULD BE DIRECTED TO IDENTIFY UNINDICTED COCONSPIRATORS.

### A.    Introduction

Pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, with respect to Counts One and Two of the Indictment, we asked the government to disclose the names and addresses of all unnamed and unindicted alleged coconspirators known to the government.  Although the Indictment and the Government Brief in Opposition to Defendants' Motions to Dismiss the Indictment identify Brian Sweet as a cooperating coconspirator, the government rejected our broader request on the ground that it is not required to disclose such information.[1]  The government, however, *is* required to provide the requested information if ordered to do so by the court in the exercise of its "sound discretion" in order to enable Ms. Holder to prepare for trial and to prevent surprise.  *E.g., United States v. Nachamie*, 91 F. Supp. 2d 565, 572 (S.D.N.Y. 2000) (Scheindlin, J.); *see also United States v. Kahale*, 789 F. Supp. 2d 359, 370 (E.D.N.Y. 2009), *aff'd sub nom.*, *United States v. Graham*, 477 F. App'x 818 (2d Cir. 2012).  For the reasons expressed below, disclosure should be ordered.

---

[1] Letter from Norman A. Bloch to AUSAs Rebecca Mermelstein, Amanda Kramer and Jessica Greenwood (transmitted on Feb. 5, 2018, but erroneously dated Feb. 5, 2017), at 9 (Requests 101 & 102) and Letter from AUSA Rebecca Mermelstein to Norman A. Bloch (Feb. 13, 2018), at 2, annexed to the accompanying Affirmation of Norman A. Bloch as Exhibits A and B, respectively.

**B.     All of the *Nachamie* Factors Support Granting the Requested Order.**

As the Court is aware, Judge Scheindlin's opinion in *Nachamie* has become the touchstone in this district for analysis of the factors to be considered in deciding whether defendants' requests for identification of unindicted coconspirators should be granted. *See, e.g., United States v. Barrett*, 153 F. Supp. 3d 552, 572 (E.D.N.Y. 2015); *Kahale*, 789 F. Supp. 2d at 372; *United States v. Oruche*, No. 07-CR-0124 (WHP), 2008 U.S. Dist. LEXIS 16701, at *8-9 (S.D.N.Y. Mar. 5, 2008); *United States v. Falkowitz*, 214 F. Supp. 2d 365, 390-92 (S.D.N.Y. 2002); *United States v. Savin*, No. 00-CR-0045 (RWS), 2001 U.S. Dist. LEXIS 2445, at *14 (S.D.N.Y. Mar. 13, 2001); *United States v. Bin Laden*, 92 F. Supp. 2d 225, 241-42 (S.D.N.Y. 2000).   Evaluation of the six *Nachamie* factors, individually and collectively, compel the conclusion that disclosure should be directed in this case.

**1.     There are alleged to be two conspiracies with a large number of alleged coconspirators.**

Where, as here, an indictment charges multiple defendants "and others" with two conspiracies, there can be "confusion over what precisely the government intends to prove at trial." *Kahale*, 789 F. Supp. 2d at 373.  In such circumstances, there is a "greater need to identify with some particularity the 'others' who are referred to" in the indictment. *Id.* (four named defendants and "unknown number of unindicted individuals"); *see also Barrett*, 153 F. Supp. 3d at 573 (where allegations refer to "others" the "potential for unfair surprise looms large"); *Oruche*, 2008 U.S. Dist. LEXIS 16701, at *10-11 (eight named defendants; government ordered to disclose "any known unindicted co-conspirator" for each paragraph "in which the word 'others' appears"); *Falkowitz*, 214 F. Supp. 2d at 391 (four named defendants and "unspecified number of co-conspirators alluded to" by use of "others" in indictment warranted disclosure); *cf. United States v. Failla*, No. 93-CR-00294 (CPS), 1993 U.S. Dist. LEXIS 18507, at *20-21

(E.D.N.Y. Dec. 21, 1993) (six named defendants; although government provided a list of unindicted coconspirator names, it was necessary to state "with respect to each paragraph of the indictment in which the word 'others' appears, the identity of the person or person referred to").

The Indictment charges five defendants with two conspiracies and three substantive counts, and repeatedly references "others" or "others known and unknown" who "conspired" with the defendants.  Indictment ¶¶27, 28, 29, 32, 34, 41, 42, 42(a)-(c), 46, 62, 68(a), 69, 72(a), 83, 88, 90, 91, 92(d), 92(h), 94, 95.  Certain of these instances appear to reference discussions in which one or more, but not all, of the named defendants and "others" allegedly discussed and/or made use of improperly acquired confidential PCAOB information.  *See, e.g.*, Indictment ¶72(a) (alleging that after re-review based on PCAOB confidential information, defendant Whittle "and others, decided to withdraw KPMG's opinion"); ¶83 (cooperating coconspirator Sweet and defendants Middendorf, Whittle, Britt, and "others" discussed the PCAOB "2017 Final List"); ¶88 (Sweet, defendant Holder, and "others" were required to provide cellular telephones); ¶92(d) (defendants Middendorf, Whittle, Britt, and "others, participated in a conference call" and "discussed the utilization of valuable confidential PCAOB information"); ¶92(h) (defendants Middendorf, Whittle, and "others participated in a conference call" in which "they acquired and discussed the utilization of valuable confidential PCAOB information").  A defendant who did not participate in an alleged discussion or act cannot be expected to know who the "others" were who did participate.

The Indictment's "others" allegations present a particular obstacle to our ability to prepare for trial.  First, and as discussed in more detail below, we will need to review the government's voluminous document productions – thus far approximately 450,000 pages plus approximately 500 GB of additional data – in hopes of identifying suspected coconspirators in

the documents and data, a challenge that could be significantly reduced if Ms. Holder were told who the "other" alleged coconspirators are.  *See Oruche*, 2008 U.S. Dist. LEXIS 16701, at *10 (disclosure "will narrow [defendant's] review" of evidence and "facilitate his preparation for trial").  Second, insofar as the government may offer in evidence at trial testimony or statements from the "others," without their pretrial identification, the defendants will not have had an adequate opportunity to evaluate whether such statements constitute inadmissible hearsay or are non-hearsay under Rule 801(d)(2)(e) of the Federal Rules of Evidence.

Moreover, the five defendants were, and the "others" referenced in the indictment appear to be, partners or employees of two unrelated entities, KPMG LLP and the PCAOB.  *See, e.g.*, *Savin*, 2001 U.S. Dist. LEXIS 2445, at *15 (noting disclosure particularly appropriate where allegations involved multiple corporations).  KPMG is a Big Four accounting firm with many partners and employees located throughout the United States.  The PCAOB is a national regulator which also employs many people in offices across the country.  The references to "others," littered throughout the Indictment, make it difficult (if not impossible) for Ms. Holder to figure out which of the many individuals affiliated with either of these two organizations the government may in fact consider a coconspirator in addition to Brian Sweet.  *Compare Savin*, 2001 U.S. Dist. LEXIS 2445, at *15 ("[t]he number of unindicted co-conspirators is potentially quite large, as no fewer than six corporations, each with its own personnel, [were] potentially involved"); *United States v. Strawberry*, 892 F. Supp. 519, 527 (S.D.N.Y. 1995) (action involving allegations of tax fraud, disclosure of unindicted coconspirators was appropriate where government alleged defendant hid funds through use of "various promoters and hosts").  Even if the universe of additional potential unindicted coconspirators were limited to the individuals

named in the hundreds of thousands of documents the government has thus far produced in discovery, that would still amount to several dozen individuals.

Put simply, the circumstances here have the potential to create precisely the sort of unfair surprise that identification of unindicted coconspirators is meant to avoid. *See Nachamie*, 91 F. Supp. 2d at 572 ("[i]f there are a large number of co-conspirators . . . a defendant is more likely to be surprised by the identity of other co-conspirators, whom he [or she] may never have met"); *Barrett*, 153 F. Supp. 3d at 572 ("it is uncertain how many co-conspirators are involved here" and therefore "potential for unfair surprise looms large").

> **2.    The alleged conspiracy lasted more than two years and operated in several states and countries.**

Courts considering this factor have emphasized both the length of time and geographic scope of alleged conspiratorial conduct, and evaluate this factor in conjunction with the number of potential coconspirators. *Nachamie*, 91 F. Supp. 2d at 572-73 (considering both the "large number of co-conspirators" and "significant period of time" together); *Kahale*, 789 F. Supp. 2d at 372 (noting "the alleged duration of the conspiracy, five years, is relatively lengthy" and "the geographic scope . . . which allegedly spanned from the New York metropolitan area to Nevada and potentially to unknown international locations"); *Falkowitz*, 214 F. Supp. 2d at 391 (noting the alleged conspiracy "lasted over four years" and was a "wide ranging" national scheme); *Oruche*, 2008 U.S. Dist. LEXIS 16701, at *9 ("conspiracies alleged in the Indictment span a number of years and continents").

Here the conspiracies are alleged to have taken place "[f]rom at least in or about 2015 through in or about 2017." Indictment ¶¶ 27, 90, 94. The Indictment alleges meetings, conference calls, and other activities in New York, *see, e.g.*, *id.* ¶¶29, 74, 90, 94, and elsewhere; it specifically alleges that defendant Holder "commute[d] from her home in Texas," *id.* ¶55, and

allegedly stored confidential PCAOB information on "her home computer." *Id.* ¶56.  Defendant Wada worked from California and cooperating coconspirator Sweet traveled, from Fresno, California, to New York and elsewhere on numerous occasions.  Indeed, as is the nature of KPMG's auditing business and the PCAOB inspection process, KPMG and PCAOB personnel routinely traveled to various locations both in and outside the United States in order to audit issuers and to inspect those audits, respectively.  For example, the Indictment notes that defendant Wada "would be the [PCAOB] team leader on a KPMG inspection in Japan," *id.* ¶58(a), and it references inspections of KPMG engagements in Germany and Switzerland.  *Id.* ¶42(b)-(c).  Thus, the Indictment alleges a conspiracy of approximately two years, apparently spanning multiple states and involving some foreign countries; this factor favors granting the our request.  *See Kahale*, 789 F. Supp. 2d at 373 (finding that a "large number of years," "unknown number of co-conspirators and geographic locales" warrants disclosure so defendant can "adequately prepare for trial and avoid unfair surprise"); *Oruche*, 2008 U.S. Dist. LEXIS 16701, at *9-10 (conspiracy which spanned "a number of years and continents" favored disclosure).

> **3.    Apart from Brian Sweet, the government thus far has not otherwise identified unindicted coconspirators in its post-Indictment disclosures to the defense.**

Here, the indictment references "others" and also uses anonymized terms to describe certain individuals or entities.  *E.g.*, Indictment ¶42(a) (referring to "Partner-1").  The government has produced to the defense a list "unmasking" the identities of the individuals and entities referenced by the anonymized terms, but it has not provided any information concerning the "others" referenced elsewhere in the Indictment, and, in particular, in paragraphs 27, 90, 91, 92(d), 92(h), 94 and 95.  The government also has not stated whether any of the "unmasked" individuals or entities were also coconspirators.  Thus, apart from Mr. Sweet, the government has

not "provided notice – in the indictment or elsewhere – of the names of the alleged co-conspirators." *Barrett*, 153 F. Supp. 3d at 573.

      **4.**      **There is a large volume of pretrial discovery to review and analyze.**

A large volume of pretrial disclosure, even where the government has organized the discovery, weighs in favor of disclosure of the identities of unindicted coconspirators. *See Oruche*, 2007 U.S. Dist. LEXIS 16701, at *9-10 (over 10,000 pages of documents and over 7,000 audio files); *Kahale*, 789 F. Supp. 2d at 372 (government did "not unfairly overwhelm[] them with mountains of unorganized discovery" but disclosure required); *Falkowitz*, 214 F. Supp. 2d at 391 (noting "[g]overnment produced [over 100,000] documents [and audiotapes] in an orderly fashion, organizing individual files" but ordering disclosure anyway).  Disclosure of the names of unindicted coconspirators in these circumstances can "narrow [defendant's] review of the [materials], and therefore, facilitate [defendant's] preparation for trial."  *Oruche*, 2008 U.S. Dist. LEXIS 16701, at *10; *see also Kahale*, 789 F. Supp. 2d at 373 (substantial volume of documents warrants disclosure of names "in order to adequately prepare for trial and avoid unfair surprise"); *Nachamie*, 91 F. Supp. 2d at 573 ("the Government has produced a substantial number of documents – more than 200,000 pages . . . Providing the names of known unindicted co-conspirators therefore will allow defendants to prepare for trial"); *United States v. Lino*, No. 00-CR-0632 (WHP), 2000 U.S. Dist. LEXIS 18753, at *38 (S.D.N.Y. Dec. 29, 2000) (given "voluminous amount of discovery" disclosure will "facilitate defendants' trial preparation and allow them to narrow, or at least prioritize, their review" and "avoid surprise at trial").

Here, the government thus far has made 10 productions (the most recent being on May 9, 2018), with possibly more to come, which total approximately 450,000 pages of documents provided to the government by KPMG, the SEC, and the PCAOB.  Additional data produced by the government from media storage devices, including cell phones, exceeds 500 GB.  In short,

the government has produced a far larger volume of documents and data than appears to have been produced in any of the above-cited cases where coconspirator identification was ordered.

In addition to the "unmasking" list, the government has identified for the defense categories of documents it has produced. Some of those categories reference specific individuals (e.g., "Personnel files pertinent to Brian Sweet and Cynthia Holder" and "Documents pertinent to Charles O'Brien"). But there is nothing in the government's category descriptions which indicates whether or not any particular identified individual, other than Brian Sweet, is, in the government's view, a coconspirator. The government's omission highlights the very purpose of this branch of the defendant's omnibus motion: To obtain the court's assistance in helping the defense understand what role and status in the charged conspiracies the government ascribes to the "others." If we were told the names of unindicted coconspirators in addition to Brian Sweet, we could "narrow" our trial preparation and "prioritize [our] review" of the voluminous discovery thus far provided. *Lino*, 2000 U.S. Dist. LEXIS 18753, at *38.

**5.      There is no potential danger to coconspirators and the alleged criminal conduct is non-violent.**

Courts consistently order disclosure of the names of unindicted coconspirators where the allegations involve complex fraudulent schemes and do not allege any violent act. *See United States v. Santiago*, 174 F. Supp. 2d 16, 35 (S.D.N.Y. 2001) (collecting cases and observing "the identities of unindicted co-conspirators have been disclosed primarily in cases in which violence was not alleged"); *Kahale*, 789 F. Supp. 2d at 373 ("the relative complexity of the fraud charges facing defendants . . . weighs in favor of requiring disclosure" and noting "there does [not] appear to be any legitimate basis for concern about [safety or witness tampering] in this white-collar fraud action involving no allegations of violence"); *Nachamie*, 91 F. Supp. 2d at 573 (distinguishing charges of Medicare fraud from those involving "narcotics trafficking or murder"

8

and requiring disclosure).   But even where the government alleged violent acts and raised legitimate concerns for witness intimidation, disclosure has been ordered.   *See Lino*, 2000 U.S. Dist. Lexis 18753, at *36-37 ("acknowledging the legitimate security concerns of the Government" where defendant conspirators were alleged to have "used violence and threats of violence to further" the scheme, but ordering disclosure nonetheless).

In this white collar prosecution, the defendants are accountants charged with obtaining confidential information from the PCAOB to be used for the benefit of KPMG.   There is no allegation of violence.   Having already identified Brian Sweet as a cooperating coconspirator, the government cannot seriously contend that there is any danger to additional unindicted coconspirators were they to be identified to the defense.

### 6.       Disclosure would not compromise an ongoing government investigation.

The events that led to this prosecution were first brought to the government's attention in about February 2017.   The Indictment, filed approximately 11 months later, was the culmination of an extensive investigation.   It is concluded.

*     *     *     *     *

The *Nachamie* factors analysis makes it clear that, in this case, there are good reasons why the government should identify unindicted coconspirators for the defense in addition to Brian Sweet, and there are no good reasons not to.   Therefore, pursuant to Fed. R. Crim. P. 7(f), the Court should order the requested disclosure.

9

**POINT II.**

**THE GOVERNMENT SHOULD BE REQUIRED TO IDENTIFY THE "OTHER DUTIES" REFERENCED IN COUNTS FOUR AND FIVE OF THE INDICTMENT**

Counts Four and Five of the Indictment allege that the defendants breached "duties of confidentiality and *other duties* owed by former or current PCAOB employees to the PCAOB." Indictment ¶¶ 99, 101 (emphasis added).  Ms. Holder's letter request for specification of those "other duties" was rejected by the government.[2]

We understand that the alleged "duties of confidentiality" to the PCAOB arise out of Ethics Code 9, which is quoted in paragraph 13 of the Indictment.  However, we do not understand the "other duties" to which Counts Four and Five refer inasmuch as elsewhere in the Indictment, there are no other "duties" to the PCAOB alleged to have been breached.

In these circumstances, to avoid surprising or sandbagging the defense at trial, *see United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir. 1987) (per curiam); the government should be directed to identify the "other duties" referenced in Counts Four and Five of the Indictment.

---

[2] Exhibit A, at 8 (Requests 94 & 97); Exhibit B, at 2.

**CONCLUSION**

For the items and reasons expressed above, the Court should order the government to provide a bill of particulars to Ms. Holder.

Respectfully submitted,


_s/Norman A. Bloch_
Norman A. Bloch
Emily J. Mathieu
Brian K. Steinwascher
Thompson Hine LLP
335 Madison Avenue
New York, New York 10017
(212) 344-5680
(212) 344-6101
_Attorneys for Defendant Cynthia Holder_


Dated:  New York, New York
        May 25, 2018

11