UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>JEFFREY WADA, *et al.*<br><br>      Defendants. | Case No. 18-cr-00036 (JPO)<br><br>ECF CASE |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT
JEFFREY WADA'S MOTION TO DISMISS THE INDICTMENT**

## I. INTRODUCTION

The government attempts to brush aside the legal defects in the Indictment using a combination of derisive language, inapposite citations, unpleaded facts, and strawman arguments. Most of these issues are addressed in the Reply Memoranda filed by Mr. Wada's co-Defendants, in which Mr. Wada joins. Here, Mr. Wada addresses the government's responses (or failure to respond) to the arguments made in Mr. Wada's Motion to Dismiss ("Wada Motion").

Specifically, Mr. Wada demonstrated that the government's Section 371 charge (Count 1) fails to allege that Mr. Wada engaged in any deceptive or deceitful action directed at the SEC. The government responded by (1) grossly misstating Mr. Wada's argument (through the creative misuse of ellipses and selective excerpts); (2) declaring Mr. Wada's argument to be a "premature factual attack[] on the Government's trial proof"; and (3) citing to evidence of Mr. Wada's use of "deceit or deception" using purported facts not found in the Indictment. The government's response is obfuscation and evasion, not legal argument.

Concerning Mr. Wada's references to *Marinello*, the government ignores the Supreme Court's admonition that courts should not rely upon prosecutorial discretion to reign in broadly worded obstruction statutes, but instead should construe them narrowly to ensure fair notice of what the law requires. Indeed, the Court need look no further than the government's repeated declaration that the Indictment "charges a straightforward scheme that falls within the heartland of Sections 371 and 1343," (*see* Opp. at 2, 21), to see the wisdom of the Supreme Court's admonition not to rely on "prosecutorial discretion to narrow the otherwise wide-ranging scope of a criminal statute's general language," *see Marinello v. United States*, 138 S. Ct. 1101, 1103-04 (2018).

Finally, Mr. Wada established that the government failed to satisfy basic pleading requirements for its conspiracy to commit wire fraud charge (Count 2). The government's response was to ignore all of Mr. Wada's authorities completely. Accordingly, Count 2 should be dismissed.

## II.  ARGUMENT

### A. The Indictment Does Not Allege That Mr. Wada Engaged in any Deceptive or Dishonest Action Directed at the SEC

The Indictment fails to allege that Mr. Wada conspired to defraud the United States under Section 371 because the Indictment does not allege in any capacity that Mr. Wada engaged in any fraudulent action, *i.e.*, action undertaken "by deceit, craft or trickery, or at least by means that are dishonest," that was directed at the SEC *as its target*. (*See* Wada Motion at 6-8 (quoting *United States v. Klein*, 247 F.2d 908, 916 (1957)).) The government begins its response with a mischaracterization of Mr. Wada's argument:

| Wada Motion to Dismiss | Government Opposition |
|---|---|
| Here, the government has not alleged that Mr. Wada *engaged in any deceptive or deceitful action directed at the SEC*, or made any statements to the SEC whatsoever in furtherance of the alleged conspiracy. (Wada Motion at 6 (emphasis added).) | Wada separately argues that the Indictment must have alleged that he "made . . . statements to the SEC in furtherance of the alleged conspiracy." (Opp. at 21 (quoting Wada Motion at 6).) |

Mr. Wada did not argue that the government must allege that he "made statements to the SEC" in order to bring its Section 371 claim, as the carefully excerpted language suggests. Yet the government proceeds to knock down this strawman with a discussion of *Tanner v. United States*, 483 U.S. 107 (1987), arguing that it has sufficiently alleged a conspiracy to defraud the United States because Mr. Wada allegedly "made use of a third party" (*i.e.*, the PCAOB). (Opp. at 21.)

As *Tanner* confirms, the defect in this Indictment is that it fails to allege that Mr. Wada "has made use of a third party *to reach the target of the fraud*." *See Tanner*, 483 U.S. at 129

2

(emphasis added) (cited in Opp. at 21-22).  In other words, it is not sufficient for the government to allege merely that a defendant acted "by deceit, craft or trickery, or at least by means that are dishonest," *see Klein*, 247 F.2d at 916 (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)), without also alleging that deceptive or dishonest actions were done in order "to reach the target of the fraud."  *See Tanner*, 483 U.S. at 129.  And the "target of the fraud" *must* be the United States government or any agency thereof.  *Id.* at 129; 18 U.S.C. § 371.  In *United States v. Haga*, the Fifth Circuit explained how this requirement is to function within an indictment:

> [S]ection 371 'conspiracy to defraud' indictments typically include language indicating that the conspiracy defrauded the government by actively interfering with some specific function in some specified affirmative manner. . . . [F]or a section 371 "conspiracy to defraud" conviction to stand, the essence of the conspiracy must at least involve a showing of more than inadvertent contact with a governmental agency or incidental infringement of governmental regulations: a criminal charge of conspiracy to defraud the federal government must "reflect[] the essence of the alleged offense."

821 F.2d 1036, 1040-41 (5th Cir. 1987) (quoting *Dennis v. United States*, 384 U.S. 855, 863 (1966)).  Here, the "essence of the alleged offense" was not a conspiracy to defraud the SEC.  In fact, a full reading of the allegations against Mr. Wada reveals the PCAOB as the only possible target of Mr. Wada's allegedly deceitful or dishonest conduct.  (*See* Indictment ¶¶ 23, 58, 62-65, 73, 79-81.)

The government cannot salvage its claim with thread-bare statements that "defendants 'agreed together and with each other to defraud the United States and an agency thereof, to wit, the SEC'" and "defendants 'using deceit, craft, trickery and dishonest means, would and did defraud the United States and an agency thereof, to wit, the SEC.'" (Opp. at 16; *see* Wada Motion at 8-9 (citing *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992) (the government is required to state each of the charges in the Indictment "with sufficient precision to inform [Mr.

3

Wada] of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events")); *Hamling v. United States*, 418 U.S. 87, 117-18 (1974) (while it is "generally sufficient that an indictment set forth the offense in the words of the statute itself," such generic language "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under general description, with which he is charged"), *abrogation on other grounds recognized by United States v. Bailey*, No. 15-CR-6082G, 2016 WL 6995067 (W.D.N.Y. Nov. 29, 2016)).)

The government's failure to allege a fraud upon the SEC through deceit or dishonesty targeting the SEC is sufficient to dismiss Count 1 against Mr. Wada. In apparent recognition of this defect, the government cites inapplicable law and creates new facts not contained in the Indictment. (*See* Opp. at 22-23.) The government relies on *United States v. Yip*, 930 F.2d 142, 146 (2d Cir. 1991) for the proposition that embezzlement is an act of deception. (*See* Opp. at 22.) Even if that were true—and the facts in *Yip* include an array of trickery, deceit, fraud, and other forms of dishonesty in the context of a different criminal statute that render its application here dubious at best[1]—the conduct that the government now characterizes as "embezzlement" was *targeted at the PCAOB, not the SEC*. (*See* Indictment ¶¶ 58, 62-65, 73, 79-81 (alleging various conduct by Mr. Wada undertaken at the expense of the PCAOB with no mention of the SEC or the impact of Mr. Wada's conduct on the SEC).)

---

[1] *See United States v. Finnerty*, 533 F.3d 143, 148 (2d Cir. 2008) (noting that "as [b]road as the concept of 'deception' may be, it irreducibly entails some act that gives the victim a false impression. 'Theft not accomplished by deception . . . is not fraud absent a fiduciary duty.'" (quoting *In re Refco Capital Markets, Ltd. Brokerage Customer Secs. Litig.*, No. 06 Civ. 643, 2007 WL 2694469, at *8 (S.D.N.Y. Sept. 13, 2007) (Lynch, J.))). In *Yip*, there was both an array of deceitful and dishonest conduct, as well as a fiduciary obligation. The court found that there was sufficient evidence introduced at trial to conclude that the defendant, an import broker, used funds entrusted to him by a client to pay personal expenses, ordered a company accountant to alter books to reclassify loans as compensation, "tricked" a client into giving his company additional money, lied to a client (through a subordinate) regarding customs procedures in order to obtain additional money, accepted client funds with no intent to deliver the money to customs officials as agreed, and used client funds to bankroll other companies, among other misconduct. *See United States v. Yip*, 930 F.2d 142, 145-46 (2d Cir. 1991).

Indeed, *Yip* supports, rather than undermines, Mr. Wada's (and the Defendants') arguments. In *Yip*, although the Court affirmed mail fraud convictions relating to the defendant's scheme to defraud the victim through various lies, *Yip*, 930 F.2d at 146-47, the Court *reversed* the convictions that attempted to convert that fraud on the victim—a private corporation—into a fraud on the United States relating to customs duties due from the victim, *id.* at 152-53. While the statute at issue (18 U.S.C. § 542) is worded differently from Section 371, the Court's reasoning and the concerns animating its rejection of the government's overbroad reading of Section 542 are equally applicable here. The Court emphasized the need to read penal statutes narrowly, and interpreted the statute to require proof of the defendant's "knowledge of the results that are of concern to the government." *Id.* at 153. This Court should similarly reject the government's claim that an indictment alleging conduct targeting the PCAOB is sufficient to charge a fraud on the United States.[2]

The government next claims, wrongly, that Mr. Wada has made "premature factual attacks on the Government's trial proof of fraudulent intent and the use of deceptive means in participating in the scheme." (*See* Opp. at 22.) Mr. Wada is not challenging the sufficiency of the government's evidence. As is plain from his Motion to Dismiss, Mr. Wada is challenging the sufficiency of the allegations in the Indictment as to Mr. Wada—those allegations simply do not include any allegation that the SEC was the target of Mr. Wada's violation of the PCAOB's rules and employee certifications even if those violations were deceitful.

The government attempts to leverage this red herring as a means to dismiss application of *United States v. Finnerty*, 533 F.3d 143 (2d Cir. 2008). In a footnote, the government claims that *Finnerty* is inapposite because the legal principles were discussed in the context of a challenge to

---

[2] Of course the Indictment here does not even do this for it alleges a violation of PCAOB rules, which is insufficient under *Finnerty*, as discussed below.

5

the sufficiency of the evidence introduced at trial. (Opp. at 22 n.5.) But Mr. Wada does not rely on *Finnerty* to argue that the government has not alleged *enough* evidence of deceit, craft, trickery, or dishonesty, but to explain that the Second Circuit, as a matter of law, has stated that a violation of workplace rules, like the PCAOB rule relied upon by the government, is not deceit, craft, trickery, or dishonesty. *Finnerty* says that absent a showing that a victim was deceived or given a false impression, the violation of a non-federal entity's regulations or rules cannot amount to an act of deception necessary for a criminal prosecution. *See Finnerty*, 533 F.3d at 148; *see also* Wada Motion at 6-8. *Finnerty*'s procedural posture does not change the legal principle that violation of a rule, without more, is not deception.

Finally, in an attempt to cure the factual deficiencies in the Indictment, the government introduces new allegations in its Opposition to support its proposition that Mr. Wada acted with deceit, craft, trickery, or dishonesty as to the SEC:

- Mr. Wada's "covert passing of his 'grocery list' of confidential PCAOB inspection information to KPMG reflects his intent to undermine the SOX inspection process and the regulatory regime overseen by the SEC,"
- "Wada was intimately familiar with the inspection process and the overall SOX regulatory scheme," and
- Mr. Wada "knew exactly why his friends and confederates at KPMG wanted that information, what they would do with it, and how that undermined the inspection process and the validity of the Inspection Reports transmitted to the SEC." (*See* Opp. at 23.)

These allegations are not only deficient, they are found nowhere in the Indictment. *See United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) ("[T]he indictment must be considered as it was actually drawn, not as it might have been drawn." (citations omitted)). Indeed, the Indictment states only that the Defendants knew that "inspection outcomes" were reported to the SEC "and utilized by the SEC to carry out its regulatory and enforcement functions"—a mere allegation of

6

knowledge, not an allegation of intent. (Indictment ¶ 91.) In short, the Indictment fails on its own terms, and that failure cannot be ignored or cured by briefing.

### B. The Government Fails to Demonstrate that *Marinello* Is Inapplicable

The Supreme Court's recent decision in *Marinello v. United States*, 138 S. Ct. 1101 (2018), instructs courts to exercise restraint in interpreting the reach of criminal statutes. Mr. Wada respectfully suggests that such restraint is particularly warranted here. The government has taken an unprecedentedly broad view of Section 371 which, if allowed to continue, will criminalize the violation of a private, non-profit entity's internal ethics rule in the absence of any deceit, craft, trickery or dishonesty targeting a government agency. (*See* Wada Motion at 5-6.) To do differently, *i.e.*, to decline to follow the broad instruct of *Marinello* and instead "rely upon prosecutorial discretion to narrow the otherwise wide-ranging scope of [Section 371's] highly abstract general statutory language," would inappropriately "place[] great power in the hands of the prosecutor." (*See id.* at 5 (quoting *Marinello*, 138 S. Ct. at 1108-09).)

In an attempt to prevent the Court from exercising the restraint required by *Marinello*, the government argues that the case is inapplicable because it "dealt with an entirely different, tax-specific statute, 26 U.S.C. § 7212(a), the text, structure, and history of which differ substantially from the defraud clause of Section 371." (*See* Opp. at 23.) But the government overlooks the portions of *Marinello*, quoted and cited in the Wada Motion, in which the Supreme Court specifically relies upon principles of statutory interpretation of criminal statues which have no exclusive attachment to the "text, structure, and history" of the particular statute at issue in *Marinello*, as well as deep concern about prosecutorial overreach. In fact, the Supreme Court expressly relies on "similar cases" relating to a diversity of statutes, all with different language and histories. *See Marinello*, 138 S. Ct. at 1109 ("The Government and the dissent urge us to

7

ignore these precedents because of those differences. . . . The language of some and the underlying principles of all these cases are similar. We consequently find these precedents—though not controlling—highly instructive for use as a guide toward a proper resolution of the issue now before us." *Id.* (citation omitted)).

Moreover, the government's assertion that the "Supreme Court has upheld the language in Section 371 and its predecessor statute against challenges for over one hundred years," (*see* Opp. at 23), supported by two cases from 1910 and 1924, ignores courts' abiding concern that the language of Section 371 is susceptible to misuse by prosecutors *See United States v. Coplan*, 703 F.3d 46, 61 (2d Cir. 2012) ("The defendants argue vigorously on appeal that the *Klein* conspiracy theory is textually unfounded. The Government's *stare decisis* defense of the *Klein* doctrine lends support to this view, as it rests entirely on the construction of § 371 in *Hammerschmidt*. There is nothing in the Government's brief recognizable as statutory interpretation—no discussion of plain meaning, legislative history, or interpretive canons. Indeed, in all 325 pages of its brief, the Government does not even quote the text of § 371. The Government thus appears implicitly to concede that the *Klein* conspiracy is a common law crime, created by the courts rather than by Congress. That fact alone warrants considerable judicial skepticism." (citations omitted)); *United States v. Mubayyid*, 658 F.3d 35, 59-60 (1st Cir. 2011) ("We are of course always wary of the dangers associated with a § 371 conspiracy. Its broad sweep can capture the innocent as well as the culpable." (citations omitted)); *United States v. Goldberg*, 105 F.3d 770, 775 (1st Cir. 1997) ("In addition to the danger of injustice inherent in a criminal conspiracy charge, the defraud clause of section 371 has a special capacity for abuse because of the vagueness of the concept of interfering with a proper government function." (citations and punctuation omitted)); *cf. Dennis v. United States*, 384 U.S. 855, 859-60 (1966)

8

("We agree that indictments under the broad language of the general conspiracy statute must be scrutinized carefully as to each of the charged defendants because of the possibility, inherent in a criminal conspiracy charge, that its wide net may ensnare the innocent as well as the culpable." (citations omitted)).

Such skepticism is of a piece with the *Marinello* Court's instruction that courts "cannot construe a criminal statute on the assumption that the Government will 'use it responsibly'" and instead must "exercise[] restraint in assessing the reach of a federal criminal statute." *See Marinello*, 138 S. Ct. at 1109 (first quoting *McDonnell v. United States*, 136 S. Ct. 2355, 2372-73 (2016), then quoting *United States v. Aguilar*, 515 U.S. 593, 600 (1995)).

### C. The Charge of Conspiracy to Commit Wire Fraud (Count 2) Fails to Provide Sufficient Notice of the Charge to Be Met

In his Motion to Dismiss, Mr. Wada explained the government's failure to state the charge in Count 2 "with sufficient precision to inform [Mr. Wada] of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." (Wada Motion at 8 (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).) The government responded by simply restating the words of the Indictment:

> Count Two sufficiently pleads a violation of Section 1349. Count Two alleges the approximate time of the conspiracy, that the defendants "willfully and knowingly combined, conspired, confederated, and agreed together and with each other to commit wire fraud," and sets forth the object of that conspiracy. (*See* Indictment ¶¶ 94-95.)

(Opp. at 26.) The government then concludes its meager defense of Count 2 with this remarkable statement: "In light of the abundance of factual detail set forth in the Indictment, nothing more is required." (*Id.*) Mr. Wada's argument as to Count 2 is simple—the 23 lines comprising Count 2 do not allege who or what is the purported target of the scheme charged in

9

Count 2. The government's vague reference to an "abundance of factual detail" in the 53-page Indictment is no answer, provides no notice to Mr. Wada, and does not cure the basic failure of Count 2's pleading. Indeed, the remainder of the Indictment points in two opposite directions—Count 1 identifies the SEC as the target, while Counts 3-5 identify the PCAOB as the target. Count 2 is silent on this point, as well as the purported money or property sought to be obtained by the conspiracy, and the purportedly deceptive means used to obtain any money or property. And the government's failure to address any of the legal authorities cited by Mr. Wada—all of which require dismissal of Count 2—amounts to a concession on this issue. *See Jordan v. Fed. Bureau of Prisons*, 2013 WL 1143617, at *7 (S.D.N.Y. Mar. 19, 2013) (dismissing a claim because the opposition did not respond to the argument in the motion to dismiss, but merely responded with further allegations in support of the claim); *id.* ("'[F]ailure to adequately brief an argument constitutes waiver of that argument' at [the] motion to dismiss stage." (citation omitted)).

### III. CONCLUSION

For all of the foregoing reasons and the reasons stated in the Wada Motion, Joint Motion, and Joint Reply, Mr. Wada respectfully requests that the Court dismiss the Indictment.

[*Remainder of page intentionally left blank.*]

DATED:  May 25, 2018                    Respectfully submitted,

                                                          BROWN RUDNICK LLP

By: /s/ *Stephen R. Cook* _____
    Stephen R. Cook (admitted pro hac vice)
    BROWN RUDNICK LLP
    2211 Michelson Drive
    Seventh Floor
    Irvine, CA 92612
    Tel: (949) 752-7100
    Fax: (949) 252-1514
    scook@brownrudnick.com

By: /s/ *Justin S. Weddle* _____
    Justin S. Weddle
    BROWN RUDNICK LLP
    Seven Times Square
    New York, New York 10036
    Tel: (212) 209-4800
    Fax: (212) 209-4801
    jweddle@brownrudnick.com

    *Attorneys for Defendant Jeffrey Wada*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on May 25, 2018, I caused to be served a true and correct copy of *Defendant Jeffrey Wada's Reply in Further Support of the Defendant's Motion to Dismiss Indictment* by filing through the Court's CM/ECF system, which sent notice electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                      /s/ Stephen R. Cook
                                                     Stephen R. Cook