UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    v.

DAVID MIDDENDORF, et al.,

              Defendants.

18 Cr. 36 (JPO)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT THOMAS WHITTLE'S
MOTION TO COMPEL PARTICULARIZATION AND PRODUCTION OF
*BRADY* MATERIAL**

CAHILL GORDON & REINDEL LLP
80 Pine Street
New York, New York 10005
Telephone: (212) 701-3000

*Attorneys for Defendant Thomas Whittle*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................1

BACKGROUND ................................................................................................................1

ARGUMENT ....................................................................................................................3

    I.   The Government Should Be Required To Particularize Its *Brady* Disclosures ..................3

        a.   Applicable Law ..............................................................................................3

        b.   Discussion ..................................................................................................6

            1.   The Government's *Mens Rea* Disclosure Is Insufficient .........................6

            2.   The Government's Work Papers Disclosure Is Insufficient ...................7

    II.  The Government Should Be Ordered To Produce Any Additional Exculpatory Material in Its Possession....................................................................................8

CONCLUSION................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brady* v. *Maryland*,
　373 U.S. 83 (1963)..................................................................................................1

*Fuentes* v. *Griffin*,
　829 F.3d 233 (2d Cir. 2016).....................................................................................4

*Giglio* v. *United States*,
　405 U.S. 150 (1972).................................................................................................3

*Kyles* v. *Whitley*,
　514 U.S. 419 (1995)..............................................................................................4–5

*Leka* v. *Portuondo*,
　257 F.3d 89 (2d Cir. 2001)....................................................................................4–5

*Spicer* v. *Roxbury Correctional Institute*,
　194 F.3d 547 (4th Cir. 1999) ..................................................................................9

*Strickler* v. *Greene*,
　527 U.S. 263 (1999).................................................................................................4

*United States* v. *Agurs*,
　427 U.S. 97 (1976)................................................................................................4–5

*United States* v. *Coppa*,
　267 F.3d 132 (2d Cir. 2001).....................................................................................5

*United States* v. *Gil*,
　297 F.3d 93 (2d Cir. 2002).......................................................................................4

*United States* v. *Mahaffy*,
　693 F.3d 113 (2d Cir. 2012).....................................................................................4

*United States* v. *Percevault*,
　490 F.2d 126 (2d Cir. 1974).....................................................................................5

*United States* v. *Rittweger*,
　524 F.3d 171 (2d Cir. 2008).....................................................................................4

*United States* v. *Rodriguez*,
　496 F.3d 221 (2d Cir. 2007)..................................................................................5–6

*United States* v. *Schwarz,*
   259 F.3d 59 (2d Cir. 2001)......................................................................................4

*United States* v. *Starusko,*
   729 F.2d 256 (3d Cir. 1984)...................................................................................5

*United States* v. *Triumph Capital Grp., Inc.,*
   544 F.3d 149 (2d Cir. 2008)..........................................................................3, 8n, 8

**Rules**

Federal Rule of Criminal Procedure 16 .....................................................................1

**Other**

*U.S. Dep't of Justice, United States Attorneys' Manual* 9-5.001 (2008)......................................4

## INTRODUCTION

Defendant Thomas Whittle respectfully submits this memorandum of law in support of his motion to compel the particularization and production of exculpatory material, pursuant to *Brady* v. *Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.  To date, the Government has either ignored or failed adequately to address certain of the defendants' requests for discovery and *Brady* materials.  As such, and because there is insufficient time to pursue further informal discussions with the Government in relation to these matters, we are filing the instant motion.

## BACKGROUND

The Indictment in this case was filed on January 17, 2018, charging Thomas Whittle and four other defendants variously in five counts, including charges of conspiracy to defraud the United States (Count One), conspiracy to commit wire fraud (Count Two), and three substantive counts of wire fraud (Counts Three through Five), in connection with an alleged scheme to misappropriate and use confidential PCAOB inspection information.

After the Indictment was filed, the Government produced discovery over a period of approximately four months, in the form of more than 75,000 documents totaling over 450,000 pages, with the most recent substantive production dated May 9, 2018.[1]  During and after the period when the discovery productions were being made, each defendant each made at least one generalized request for discovery, including *Brady* material.[2]  On February 13, 2018, the

---

[1] Because we cannot currently access the entirety of the Government's May 9, 2018 production, the document and page counts are necessarily understated.  We are currently working with the Government to remedy this technological issue.

[2] *See* Letter from Nelson A. Boxer et al. to the Government (Feb. 5, 2018) (attached as Exhibit A to the accompanying Declaration of Nola B. Heller ("Heller Decl.")); Letter from Norman A. Bloch to the Government (transmitted on Feb. 5, 2018, but erroneously dated Feb. 5, 2017) (Heller Decl., Exhibit B); Letter from Nelson A. Boxer et al. to the Government (Mar. 27, 2018)

Government made largely generalized responses to the discovery requests from defendants Middendorf and Holder, neither of which contained any *Brady* disclosures.  Rather, these letters each simply noted that the Government was aware of its constitutional and statutory discovery obligations, and intended to comply with those obligations.[3]

On February 15, 2018, the undersigned received a copy of the transcript of the guilty plea of Government cooperating witness Brian Sweet after placing an order with the court.  In his guilty plea on January 5, 2018, Sweet stated that, at the time he obtained, shared, and used the PCAOB inspection selection information in this case, he was not aware that his conduct was criminal.  *See* Transcript of Plea Allocution at 21:19–22, *United States* v. *Sweet*, No. 18 Cr. 8 (JPO) (S.D.N.Y. Jan. 5, 2018) (Heller Decl., Exhibit L).  The Government did not provide the defendants with a transcript of these proceedings, nor did it notify the defendants of Sweet's statements at any time after they were made.

On June 1, 2018, after repeated requests by the defendants for *Brady* material, the Government provided the parties with a letter containing multiple substantive *Brady* allegations, including, relevant to the instant motion, the following two disclosures:

- "The following individuals have indicated that they were aware, to varying extents, of Brian Sweet's and/or KPMG's possession of confidential PCAOB information concerning inspection targets and did not realize or think such

---

(Heller Decl., Exhibit C); Letter from Melinda Haag et al. to the Government (May 4, 2018) (Heller Decl., Exhibit D); Letter from Stephen R. Cook to the Government (May 9, 2018) (Heller Decl., Exhibit E); Letter from Stephen R. Cook to the Government (May 15, 2018) (Heller Decl., Exhibit F); Letter from Norman A. Bloch to the Government (May 17, 2018) (Heller Decl., Exhibit G); Letter from Bradley J. Bondi et al. to the Government (May 21, 2018) (Heller Decl., Exhibit H); Letter from Melinda Haag et al. to the Government (June 4, 2018) (Heller Decl., Exhibit I).

[3] *See* Letter from the Government to Nelson Boxer et al. (Feb. 13, 2018) (Heller Decl., Exhibit J); Letter from the Government to Norman Bloch (Feb. 13, 2018) (Heller Decl., Exhibit K).

conduct was criminal, or believed such conduct was okay because Sweet and/or

others at KPMG had the information, or did not believe the information was

confidential:  John Atkinson, Dabie Tsai, Jennifer Lauer, Jennifer Stemple, Peter

Torrente, Scott Henderson, Thomas Garton, Christopher VanVoorhies, and

William O'Leary."

- "The following individuals have expressed the view that changes made to audit
  work papers in 2016 were not substantive:  Jennifer Lauer, Peter Torrente, Chris
  Brown, and Diana Kunz."

*See* Letter from the Government to All Counsel of Record at 2–3 (June 1, 2018) (Heller Decl.,

Exhibit M).  The Government did not provide notes, underlying reports, or any additional detail

related to the above-quoted disclosures made in its June 1, 2018 letter.  This motion follows.

## ARGUMENT

The Government's recent *Brady* disclosures lack the completeness and specificity

required by law, and must be supplemented in order to give Mr. Whittle the opportunity to assess

and investigate them prior to trial.  In addition, the Government should be required to produce

any remaining exculpatory information in its possession in the form of communications between

KPMG's attorneys and the Government.

I.    **The Government Should Be Required To Particularize Its *Brady* Disclosures**

a.    **Applicable Law**

Under *Brady* and its progeny, "[t]he Government has a duty to disclose all material

evidence favorable to a criminal defendant."  *United States* v. *Triumph Capital Grp., Inc.*, 544

F.3d 149, 161 (2d Cir. 2008) (requiring disclosure of exculpatory statements made by counsel for

witness); *see also Giglio* v. *United States*, 405 U.S. 150, 154–55 (1972) (requiring disclosure of

evidence that can be used to impeach prosecution witnesses).  Evidence is considered favorable

to the accused where it is exculpatory or impeaching.  *See, e.g.*, *Strickler* v. *Greene*, 527 U.S. 263, 281–82 (1999); *United States* v. *Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012).  The exculpatory value of the evidence is not negated by the Government's possession of evidence contradicting the exculpatory information.  *See United States* v. *Rittweger*, 524 F.3d 171, 181 (2d Cir. 2008).

The Government must disclose exculpatory information that is material to the defense. *See United States* v. *Agurs*, 427 U.S. 97, 110–11 (1976) (noting that "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even without a specific request" and the standard of materiality "governs [the prosecutor's] obligation to disclose exculpatory evidence"); *Fuentes* v. *Griffin*, 829 F.3d 233, 245–46 (2d Cir. 2016) (noting that the prosecution has an "affirmative duty to disclose evidence favorable to a defendant" and an accused's due process right is violated if material evidence is withheld).  In the Second Circuit, evidence may be material for *Brady* purposes even though it is not admissible, so long as the information "could lead to admissible evidence." *Mahaffy*, 693 F.3d at 131 (quoting *United States* v. *Gil*, 297 F.3d 93, 104 (2d Cir. 2002)).  As a backward-looking inquiry, the materiality standard is difficult to apply at the pretrial phase.  *See United States* v. *Schwarz*, 259 F.3d 59, 64 (2d Cir. 2001) (evidence is material under *Brady* if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict" (quoting *Kyles* v. *Whitley*, 514 U.S. 419, 434–35 (1995))); *see also Leka* v. *Portuondo*, 257 F.3d 89, 104 (2d Cir. 2001) ("Materiality is assessed in light of the evidence adduced against the defendant at trial . . . .").  Consequently, the United States Attorneys' Manual directs prosecutors to take a broad view of materiality when making pretrial *Brady* disclosure decisions.  *See U.S. Dep't of Justice*, *United States Attorneys' Manual* 9-5.001

4

(2008) (citing *Kyles*, 514 U.S. at 439 (1995)); *accord Agurs*, 427 U.S. at 108 (noting that given the "significant practical difference between the pretrial decision of the prosecutor and the post-trial decision of the judge" and the "inevitably imprecise standard" to be applied, "the prudent prosecutor will resolve doubtful questions in favor of disclosure").

To avoid disputes over whether *Brady* disclosures are timely, courts have the authority to order pretrial disclosure of *Brady* material "as a matter of sound case management." *United States* v. *Coppa*, 267 F.3d 132, 146 (2d Cir. 2001); *see also United States* v. *Starusko*, 729 F.2d 256, 261 (3d Cir. 1984) ("[T]he district court has general discretionary authority to order the pretrial disclosure of *Brady* material to ensure the effective administration of the criminal justice system.") (internal quotation marks omitted); *accord United States* v. *Percevault*, 490 F.2d 126, 132 (2d Cir. 1974) ("Pretrial discovery should be approached with a spirit of cooperation among court and counsel in order to prevent those burdensome trial recesses and also, we should emphasize, to protect the Government against . . . claims of suppression of material and favorable evidence."). Indeed, "[i]f the material proves to be the sort that occasions investigation by the defense (an appraisal better made by the defendant's attorney than by the Government's), failure to disclose before trial may either deny the defendant the benefit of the disclosure (and perhaps raise doubts about the accuracy of the verdict), or require a mid-trial adjournment, to the great inconvenience of the court, the jury, and all participants." *United States* v. *Rodriguez*, 496 F.3d 221, 228 n.6 (2d Cir. 2007). The failure to make pretrial disclosure of exculpatory information violates the *Brady* doctrine when it deprives the defense of a reasonable opportunity to investigate the information or otherwise use it effectively before the trial begins.

Finally, *Brady* "disclosures must be sufficiently complete and specific to be useful." *Id.* at 226; *see also Leka*, 257 F.3d at 103 ("The opportunity for use under *Brady* is the opportunity

for a responsible lawyer to use the information with some degree of calculation and forethought.").

### b. Discussion

#### 1. The Government's *Mens Rea* Disclosure Is Insufficient

In its June 1, 2018 letter, the Government informed the defendants that nine different individuals (not including Brian Sweet) "were aware, **to varying extents**, of Brian Sweet's **and/or** KMPG's possession of confidential PCAOB information concerning inspection targets and did not realize **or** think such conduct was criminal, **or** believed such conduct was okay because Sweet **and/or** others at KPMG had the information, **or** did not believe the information was confidential." *See* Heller Decl., Exhibit M, at 2–3 (emphasis added).  This disclosure contains so many disjunctives and alternatives that it is virtually impossible to determine who held what view or the nature of the actual information being disclosed.  It is unclear why the Government would have chosen to obfuscate the details of these nine individuals' statements.  By lumping the statements together and describing them in an incomprehensible way, the Government has nullified the usefulness of its disclosure.  The disclosure lacks enough completeness or specificity to allow the defendants adequately to investigate and prepare for trial.  *See Rodriguez*, 496 F.3d at 226.

Accordingly, the Court should order the Government to completely and specifically disclose, separately by each witness, the substance of any exculpatory statements, in order to allow the defendants adequately to investigate and prepare for trial.  Although there is no particular form required for *Brady* disclosures, the clearest and simplest way for the Government to convey this critical information to the defense would be to turn over the relevant portions of the notes and memoranda from its interviews of the nine named witnesses, as well as of Brian

Sweet and any other individuals who provided exculpatory information to the Government.  We request that the Court order the Government to do so.

## 2.   The Government's Work Papers Disclosure Is Insufficient

The Government informed the defendants in its June 1, 2018 letter that four individuals "have expressed the view that changes made to audit work papers in 2016 were not substantive." *See* Heller Decl., Exhibit M, at 3.  This disclosure is important because it tends to negate the Government's theory that the defendants' conduct rose to the level of a criminal violation.  If the changes to the audit work papers were not substantive, and if the defendants acted within the parameters of the auditing standards in making those changes, then it can be argued that the defendants did not have the requisite intent to have committed any crimes in this case.

The Government, to date, has not provided the defendants with the complete work papers relevant to the 2016 audits.  If the defendants are to adequately investigate this disclosure, they need more particularity about which changes to the audit work papers the Government will attempt to prove were, in fact, substantive.[4]  As of now, the defendants have no way to properly evaluate this *Brady* disclosure.  The Government has not specified exactly which changes it will attempt to prove were made to the work papers, when they were made, or by whom they were made.[5]  Nor has it specified exactly which changes the four *Brady* witnesses were terming as non-substantive.  Nor has the Government pursued the alternative of providing the defendants with the complete audit work papers, allowing them to independently assess the substantive

---

[4] For example, portions of the audit work papers that have been produced to the defendants reference other portions that have not been produced.  Without more specificity to the Government's disclosure, the defendants cannot discern whether the missing portions of the audit work papers are material to the defense.

[5] The Indictment includes a brief description of alleged changes made to the work papers of three different issuers as exemplars of the defendants' conduct, *see* Indictment ¶ 72, but goes no further.

nature of any changes that were made.  As such, the defendants are hamstrung from making a proper defense on this point.

The Government should be required, *at a minimum*, to inform the defendants which allegedly substantive changes to the audit work papers it intends to prove at trial, and to provide the relevant underlying documentation of the changes to the defendants.  In the alternative, if the Government is unwilling to provide this information, it should be required to produce the complete 2016 audit work papers to the defendants, as well as documents allowing the defendants to determine the nature and timing of the changes made to the work papers after the alleged misappropriations of the inspection lists, so that the defendants themselves can assess the work papers and the changes made thereto.

## II.    The Government Should Be Ordered To Produce Any Additional Exculpatory Material in Its Possession

Mr. Whittle has requested various additional materials submitted by KPMG to the Government that may contain exculpatory information.  *See* Heller Decl., Exhibit H, at 4.[6]  If any such communications exist, and if they involved, for example, attorneys for KPMG and/or its current or former employees asserting that no crime was committed in this case based on evidence derived from internal investigations of the matter, the defendants are entitled to receive those communications.  Statements made to the Government by attorneys on behalf of their clients are attributable to the clients, for purposes of *Brady*.  *See United States* v. *Triumph*

---

[6] Two of the search warrant affidavits produced to the defendants as part of the discovery in this case specifically noted that KPMG had made hypothetical proffers of fact to the Government, and that some of these hypothetical accounts contained information that contradicted other evidence.  *See* August 25, 2017 Agent Affidavit in Support of Application for Search and Seizure Warrant, ¶ 35, n.3 (Heller Decl., Exhibit N); July 21, 2017 Agent Affidavit in Support of Application for Search Warrants for Stored Electronic Communications, ¶ 29, n.2 (Heller Decl., Exhibit O).  If any such hypothetical proffers contained exculpatory information, the defendants are entitled to receive them.  *United States* v. *Triumph Capital Grp., Inc.*, 544 F.3d 149, 163 (2d Cir. 2008).

*Capital Grp., Inc.*, 544 F.3d 149, 163 (2d Cir. 2008) (*Brady* violation found where prosecution failed to produce records of attorney proffer made to the Government); *Spicer* v. *Roxbury Correctional Institute*, 194 F.3d 547, 559–61 (4th Cir. 1999) (same).

The Government did not respond to this request in its *Brady* letter except to state, without citation, that "[y]our request for all communications between this Office, the SEC, and KPMG for the stated purpose of assessing whether the Government 'has constructive possession of KMPG files related to this matter' is also unfounded and meritless."  *See* Heller Decl., Exhibit M, at 2.  Mr. Whittle has not requested these materials in order to pursue a constructive possession theory; rather, Mr. Whittle believes that such communications likely contain *Brady* material, and thus must be disclosed immediately.  If the Government is in possession of communications containing exculpatory information made to the Government by counsel for KPMG or any of its current or former employees, the defendants are entitled to receive them.

## CONCLUSION

For the foregoing reasons, Mr. Whittle respectfully requests that the Court grant the relief requested herein. Mr. Whittle reserves the right to make additional motions as appropriate and applicable, including, but not limited to, motions related to issues that were not apparent by June 8, 2018. Further, Mr. Whittle joins in each of his codefendants' pretrial motions, to the extent applicable.

Dated:   June 8, 2018                              Respectfully submitted,
         New York, New York

                                                   _____
                                                   Bradley J. Bondi
                                                   Nola B. Heller
                                                   Sean P. Tonolli (*pro hac vice*)
                                                   CAHILL GORDON & REINDEL LLP
                                                   80 Pine Street
                                                   New York, NY  10005
                                                   Tel: (212) 701-3008
                                                   nheller@cahill.com

                                                   *Attorneys for Defendant Thomas Whittle*