J3bdmid1

```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2    ------------------------------x

 3    UNITED STATES OF AMERICA,                  New York, N.Y.

 4                 v.                            18 Cr. 0036(JPO)

 5    DAVID MIDDENDORF and JEFFREY
      WADA,
 6
                     Defendants.
 7
      ------------------------------x
 8
                                                March 11, 2019
 9                                              9:30 a.m.

10
      Before:
11
                          HON. J. PAUL OETKEN,
12
                                                District Judge
13                                              and a jury

14

15                             APPEARANCES

16    GEOFFREY S. BERMAN
           United States Attorney for the
17         Southern District of New York
      BY:  REBECCA G. MERMELSTEIN
18         AMANDA K. KRAMER
           JORDAN LANCASTER ESTES
19              Assistant United States Attorneys

20    PETRILLO KLEIN & BOXER LLP
           Attorneys for Defendant David Middendorf
21    BY:  NELSON A. BOXER
           AMY R. LESTER
22         ALEXANDRA REBECCA CLARK
                - and -
23    BRUCH HANNA LLP
      BY:  GREGORY S. BRUCH
24

25
```

j3bdmid1

1                         APPEARANCES CONTINUED

2    BROWN RUDNICK LLP
          Attorneys for Defendant Jeffrey Wada
3    BY:   STEPHEN COOK
          JUSTIN S. WEDDLE
4         SELBIE JASON
               – and –
5    LATHAM & WATKINS
     BY:   JASON MASASHI OHTA

6

7              – also present –

8    Lyeson Daniel, Postal Inspector
     Virginia Faughnan, Postal Inspector
9    Luke Urbanczyk, Government Paralegal
     Nathaniel Cooney, Government Paralegal
10   Kiezia Girard-Lawrence, Postal Inspector
     Stephanie O'Connor, Defendant Middendorf paralegal
11   Sarah Chojecki, Defendant Wada paralegal

12

13                                  oOo

14

15

16

17

18

19

20

21

22

23

24

25

j3bdmid1

1          (9:30 a.m., jury deliberations resumed)

2          (10:12 a.m., jury not present)

3          THE COURT:  Good morning, everyone.

4          ALL COUNSEL:  Good morning, your Honor.

5          THE COURT:  I came down to talk about the letters I've

6    received, but in the meantime the marshal just handed me a note

7    from the jury.  It's signed by Juror No. 3, John Danko, who is

8    the foreperson, and it says:  "Request transcript of D.

9    Middendorf and T. Whittle regarding 2015 lists."  I'll read it

10   again:  "Request transcript of D. Middendorf and T. Whittle

11   regarding 2015 lists."

12         Dated today.

13         I'll mark that as Court Exhibit 2.

14         Court Exhibit 1 is a copy of the written jury

15   instructions as sent in to the jury.

16         And I have received a letter yesterday, March 10th,

17   from counsel for Mr. Middendorf and a response just in the last

18   hour, or half hour or so from the government.

19         Do you all want to address any of that?

20         MR. BOXER:  Sure, your Honor.

21         I have read the government's response.  I don't think

22   it addresses the fact that they added evidence that was not in

23   the record regarding a chain or like an Olive Garden.  And I

24   think for them to say that they absolutely did not shift the

25   burden is really a little frivolous when they said, "But if the

j3bdmid1

1    restaurants look different inside, don't you think they would

2    have shown you a photo?"  When you pair that with saying I'm

3    not shifting the burden, you're basically shifting the burden.

4    They can't like --

5             THE COURT:  But I think I clarified on that.

6             MR. BOXER:  You did.

7             THE COURT:  And then it is in the instructions.

8             MR. BOXER:  You did.  But I think they added argument

9    that was not in the record.  They didn't make a comparison

10   between the two outsides of the restaurant, which they allude

11   to in their letter today, but that's not what they did.

12            And they even misstated Mr. Sweet's testimony in their

13   rebuttal where they then said:  "If you see a photo of an Olive

14   Garden in Philadelphia and an Olive Garden in New York City and

15   you say that looks like where I ate, now you're a liar?"  And

16   that's obviously not what Mr. Sweet said.  That wasn't the

17   point we made about his testimony during our summation.  I

18   think in that way they vouched for their witness by introducing

19   evidence that wasn't in the record and minimizing what he said

20   about the restaurant.

21            And then there is the question of their good faith.

22   There was nothing in their letter about whether they were aware

23   of the difference in appearance between the interiors of the

24   two restaurants.  As we put in our letter, it seems

25   inconceivable that they didn't check that fact after we

j3bdmid1

introduced it on Mr. Sweet's cross.

And, you know, for those reasons and all the reasons in our letter, I think -- we ask for a mistrial and, alternatively, ask for the corrective instruction we put in our letter.  I think it was just clear error what they did and not supported by anything in the evidence.

As far as Mr. Hanson, we still are ignorant of what the reason was that the letter was filed ex parte.  I appreciate it that the government doesn't have Mr. Hanson's counsel's letter, but I think we should be provided with his letter for the reasons we describe, in particular the change in attitude and change in testimony of Mr. Hanson.  So, I'm not sure why it was filed ex parte in the first place, but I don't understand why we can't even see it.

THE COURT:  Well, I mean, I think it was filed ex parte so as not to reveal government strategy for cross, and defendants filed similar letters ex parte in a few instances so as not to reveal the strategy of their cross.

MR. BOXER:  Well, that really highlights the reason why we need it, because if what was in that letter might have informed its cross and if it met with Mr. Hanson, then that might explain the change in attitude of the testimony of Mr. Hanson, that the government had the ability to or threat to cross-examine him.

THE COURT:  So what is the argument?

j3bdmid1

1              MR. BOXER:  The argument is that if we were aware of

2      what the government was prepared to cross-examine him with, we

3      could have examined Mr. Hanson as to the reason why he's not

4      testified forthright and substantially as he did in his

5      interview.

6              THE COURT:  But he is not a government witness under

7      Giglio, so what right would you have to the information?

8              MR. BOXER:  Well, if they've exerted pressure on the

9      witness in some way, I think we would be entitled to know that

10     to be able to meet the change in attitude and change in

11     testimony of the witness.

12             And that's our request.  It is still our request.

13             THE COURT:  So on that --

14             MR. BOXER:  Something happened to him, and he

15     obviously went from spending almost three hours with our

16     investigator to being an extraordinarily reluctant witness.

17     And it appears that something that the government was able to

18     impeach him about explains that change in attitude, and we

19     weren't able to at least present that fact to make that

20     argument to the jury.

21             THE COURT:  Would you all like to respond?

22             MS. MERMELSTEIN:  Your Honor, I think we have

23     responded on Friday and in writing.

24             With respect to Mr. Hanson, your Honor is exactly

25     right.  The government didn't call him as a witness.  There is

j3bdmid1

no obligation to share what it might ask him about on

cross-examination with defense either in advance or ever.  It

goes without saying that the government did not pressure a

defense witness to change his testimony in any fashion.

Indeed, the witness, to our knowledge, is unaware that we knew

of the facts that we intended to impeach him with.  For the

same reason we didn't want the defense to know, we wouldn't

have wanted the witness to know.  We filed the letter ex parte

not just from defense counsel but from Mr. Hanson's counsel.

And so there not only was no suggestion of pressure, he doesn't

even know that we were thinking about impeaching him in that

fashion.  So the suggestion that somehow he changed his

testimony in light of that is simply completely unsupported,

notwithstanding that it is, of course, the case that the

government would never do that.

It is also not at all unusual, as I think everyone in

this room knows, that the notes of a witness' testimony

don't -- you know, are different than the way a person speaks

on the stand, and it is not at all unusual that something that

is in the 3500 for a witness doesn't come out on direct, that

the witness remembers differently at the time he testifies.  So

the fact that the testimony was less helpful to the defense

than they had hoped doesn't suggest anything.  So I think -- on

that front, I think there is no basis to unseal the letters.

I certainly think, as the government has said before,

j3bdmid1

1  that as it relates to matters that were separately

2  confidential, Mr. Hanson's lawyer ought to have a chance to be

3  heard before anything is unsealed, either the government's

4  letter or that letter.  But I think this is simply not an issue

5  that relates to the jury's deliberations, and so, you know, if

6  defense counsel wants to take that up, that's fine, but it

7  should be done with Mr. Hanson's counsel.  We don't think there

8  is a basis to unseal it.  Full stop.

9        With respect to the Avra argument, there was

10  absolutely no burden shifting and no vouching for a witness.

11  There has not even been an allegation that the government said

12  something like "I believe the "witness," "the government

13  believes the witness."  We made an argument, in response to an

14  argument from the defense about why should not believe

15  Mr. Sweet, saying that argument was wrong and he should be

16  believed.  That's not vouching.

17        And we commented on the evidence that was offered by

18  the defense.  They could have offered different evidence.  If

19  they're so confident that the two restaurants look so

20  different, I don't agree with their assessment of that, but I

21  guess reasonable minds can disagree.  That's for the jury.

22  They made a strategic decision not to offer a photo of the

23  interior of the restaurant because they look the same, it seems

24  to us.

25        In any event, the suggestion -- they've argued that

j3bdmid1

1    the photo they did put in shows the restaurants are different.

2    It patently does not show that.  It shows the exterior of the

3    restaurant.  It tells you nothing whatsoever about the

4    interior, which is what we said, that you should not credit the

5    evidence that they offered because it did not show the thing

6    they claimed it showed and that they had strategic reasons for

7    presenting it in the way that they did.  That is one-hundred

8    percent proper argument.  It is argument.

9            Defense counsel doesn't have to put in evidence but

10   they put in evidence, and the suggestion that this the

11   government can't comment on that is ridiculous.  The photo

12   itself was on the screen during the rebuttal.  It was perfectly

13   clear what I was talking about.  And so the notion that this is

14   somehow unfair or somehow burden shifts I think is patently not

15   correct.

16           I said at the time I made that argument they don't

17   have any burden.  There was an objection.  Your Honor gave a

18   more robust instruction about the burden always remaining with

19   the government, and they have since been instructed in the

20   ordinary course that, of course, as has been said multiple

21   times during the summations, the government has the burden.  So

22   even if there were some inadvertent burden shifting -- and to

23   be clear, there really was nothing of the kind -- there is no

24   need whatsoever for any further instruction in an effort to

25   have the Court suggest something about this piece of evidence

j3bdmid1

1      to the jury in particular.  I just don't think there is any

2      basis for any additional instruction, and certainly there is

3      not remotely a basis for a mistrial.

4                MR. BOXER:  Your Honor, counsel's claim that

5      Mr. Hanson's counsel never even received or was aware of his

6      own ex parte letter to me means that we don't need any

7      consultation for that letter with Mr. Hanson's counsel.

8      According to the government, they don't even know that the

9      government filed a letter.  So, I don't know why we need

10     consultation and his input about a letter that he knows nothing

11     about.  That doesn't makes any sense.

12                And despite all the hyperbole from the government

13     about what it absolutely positively didn't do, first, there is

14     the cites to the website, which I think shows the interiors

15     looking differently.  The government, I guess by their silence,

16     acknowledges that they are aware of that.  They are certainly

17     not saying they are unaware of it.  And Mr. Sweet didn't just

18     testify to "This looks like it," he said:  "That's the

19     interior.  That's where we sat.  That booth, second booth on

20     the left."

21                But even more significantly, the absolutelies,

22     certainlies, positivelies coming from the government, it is

23     clear that they testified to facts not in evidence.  The photo

24     on the left is of the outside of the restaurant.  This is a

25     restaurant chain.  There is no evidence that this is a

j3bdmid1

1    restaurant chain.

2              THE COURT:  No, but the --

3              MR. BOXER:  The two restaurants.

4              THE COURT:  The M --right.  I mean --

5              MR. BOXER:  If you see a photo of an Olive Garden -- I

6    don't know, there are thousands of those, maybe -- in

7    Philadelphia and an Olive Garden in New York City and you say

8    that looks like where I ate, now you're a liar.  It's the same

9    chain.  There was no evidence that it was a chain.  It doesn't

10   make any sense.

11             Again, they have no burden but now I'm going to shift

12   the burden.  But if the restaurants look different inside,

13   don't you think they would have shown you a photo of the

14   inside?  That is the shifting the burden to us whatever they

15   predicate it with or not.  And I believe they made that

16   statement in rebuttal knowing full well that the interiors look

17   different and that the exhibit that they showed their witness,

18   1507, where he pointed to the booth where he sat right next to

19   Middendorf had no bearing on reality once they -- once we made

20   that point in cross.

21             So, I think they did add evidence that wasn't in the

22   record.  They could have proven up that Avra was a chain.  It

23   is not.  That everything looks the same as it does in Olive

24   Garden, and it doesn't.  I mean, that's their burden to prove.

25             THE COURT:  So you want me to instruct the jury to

j3bdmid1

1    disregard that part of summations even though I have already

2    told the jury repeatedly that summations are not evidence?

3            MR. BOXER:  I do, because I think they now have in

4    their mind evidence that -- facts that aren't in evidence.  So

5    I think it has to be particularized to that particular argument

6    they made, not a general statement, but, you know, in one

7    instance that evidence was mentioned that's not in evidence.  I

8    think I gave an example of how I would propose doing it.

9            THE COURT:  Well, there was no evidence mentioned that

10   was not in evidence.

11           MR. BOXER:  Well, they said it was a chain.

12           THE COURT:  Well, and that was based on the same logo

13   with two different locations that was commenting on M277, or

14   whatever the number is.

15           MR. BOXER:  Commenting on M277 and 1507 is here are

16   the two photos.  It is the same name.  And to credit what they

17   said today, you know, you've just seen the exterior.  They

18   didn't show the interior.  But what counsel said was this is a

19   chain like the Olive Garden, where they all look the same on

20   the inside.  That is what she was arguing to them.  They had no

21   basis to do that.  There is no evidence that it was a chain

22   restaurant.  And there is no evidence that they all looked the

23   same on the inside.

24           THE COURT:  Well, I think the jury realizes that.  I

25   think the jury knows that the evidence is those two photos, and

j3bdmid1

1   I don't think the jury is confused into thinking that there is

2   evidence about Olive Garden in this trial.

3          MR. BOXER:  Not Olive Garden but they are told that it

4   is a chain, and the argument is that they are all the same on

5   the inside.  And they are not all the same on the inside, as we

6   showed in our letter.  And I think they know it, otherwise they

7   would have proved how they look differently on the inside.

8          THE COURT:  You could have proved that, too.

9          MR. BOXER:  We could have but we thought the point was

10  made because it was clear -- plus, with the invitations and the

11  calendar invites, it was clear he didn't go to that restaurant

12  on 60th Street.  That's what they establish.  And he didn't go

13  to the local lunch to sit in that booth.  And so we had enough

14  evidence to make that point.  It is the government who took it

15  further to say, well, the two restaurants look the same inside,

16  like any other chain -- which they don't and is not correct --

17  and don't you think if they look different on the inside, they

18  would have also showed you that photo -- which is the burden

19  shifting.

20         So we made our point with the exhibit we had, and they

21  then in rebuttal, when we can't even make the arguments I am

22  making now, they tell the jury that it is a chain and if it

23  looked any different on the inside, don't you think they would

24  have shown it to you.  So, I think an instruction -- a limited

25  one is appropriate, assuming you are denying our motion for a

j3bdmid1

1    mistrial.

2              THE COURT:  Well, I am denying the motion for a

3    mistrial.  I find that the high standard for a mistrial isn't

4    met here.

5              With respect to the ex parte letter about Jay Hanson,

6    I'm considering the idea -- I do think it is fair for you to

7    see it, now that the reason for its being filed ex parte no

8    longer exists, which is revealing defense strategy.  However,

9    doing it right now, I don't know that there is any magic in

10   doing it now.  It's not going to result in any -- it is not

11   going to affect -- it is not going to result in new evidence.

12   It is not going to result in a curative instruction, I can tell

13   you that now.

14             Whether you want to make some sort of argument that

15   this person was effectively a government witness and therefore

16   you had a right under <u>Giglio</u> to have it or something, that's --

17   you know, that may be an argument to make.  I'm not persuaded

18   from what I have seen that there was any misconduct here.

19             MR. BOXER:  It may or may not be an argument we make,

20   but without seeing it I can't assess that.

21             THE COURT:  Right.  I will probably let you see it,

22   but I don't know that I need to right now while the jury is

23   deliberating.

24             With respect to the Avra stuff, I mean, I can see how

25   saying the defendant would have put in evidence could be

j3bdmid1

1     interpreted an as burden shifting, and that's why I made the

2     curative instruction during the closing, which I'm not crazy

3     about doing but I did it.

4              The separate argument that the government was putting

5     in facts not in evidence, I don't think it was misconduct

6     because I think that saying it was a chain was commenting on

7     M277 and it is in the same typeface and the same -- the clear

8     indication from that exhibit is that they are sister

9     restaurants, which I think "chain" fairly encompasses a sister,

10    sibling restaurant.

11             And I agree that the reference to "Olive Garden" may

12    have been a stretch, but I also think that the jury was not

13    confused by it.  I don't think the jury thought that there was

14    evidence that wasn't there.  I think the jury knows that there

15    are these two pictures in evidence, and I have been clear with

16    the jury that the closings are not evidence.  So, I don't think

17    any curative instruction is necessary or appropriate as to that

18    at this time.

19             Do you all want to work on the request?

20             MS. MERMELSTEIN:  Yes.  Is your Honor's intention to

21    send back the transcript to them or to read it back?

22             THE COURT:  Send it back.

23             MS. MERMELSTEIN:  OK.  Yes, we will work on it right

24    now.

25             THE COURT:  OK.

J3bdmid2

1          All right.  Please let Mr. Hampton know when you are

2     ready to talk about it.

3          (Recess pending jury verdict)

4          (11:50 a.m., jury not present)

5          THE COURT:  OK.  I want to address with the parties

6     Court Exhibit Number 2, which is the jury's note requesting a

7     transcript of Middendorf and Whittle regarding 2015 lists.

8          I understand you have agreed on part but not

9     everything that should be included in that request.

10          MS. KRAMER:  That is correct, your Honor.  So we have

11     some passages that remain in dispute, and we can put them up on

12     the screen for your Honor to see.  The first one concerns

13     defendant Middendorf's testimony on page 2887.

14          Is that displayed for everybody?  OK.

15          So counsel for Middendorf wants us to remove lines 7

16     through 12.  I guess it is really 6 through 12 if you include

17     the entirety of the question.  And as you can see from the

18     prior two lines, Ms. Estes was asking the defendant about

19     Government Exhibit 754, which was the email in which the 2015

20     list was transmitted to Middendorf.  And then asking:  "You

21     testified you didn't recall this document," meaning the email

22     with the 2015 list.

23          And then:  "You would understand that that was

24     confidential information?"

25          "Yes.

J3bdmid2

1           "That's information you shouldn't have?

2           "Correct."

3           So, to us that's squarely responsive to the request

4    for his testimony about 2015 lists.  That is the first item in

5    dispute.

6           MR. BOXER:  The question starts with, "You don't

7    recall the document?"  So I don't think it is about the list.

8    It is about information generally and confidential information

9    about something that he doesn't remember.  So, I think the

10   request was testimony regarding the list.  He said he doesn't

11   remember it, so that's why we don't think that section is

12   appropriate.

13          THE COURT:  OK.  I think that's clearly within the

14   request.

15          Next.

16          MS. KRAMER:  Next, your Honor, is page 2889, lines 19

17   through 24.  This is another request from defendant Middendorf

18   to have these lines removed from the selections going back to

19   the jury.

20          MR. BOXER:  The same -- just if I may, your Honor?

21          THE COURT:  Yes.

22          MR. BOXER:  The way counsel frames it, like we want

23   them removed.  The process was they made a suggestion.  We

24   agreed with 90 percent of it.  These are the ones we disagree

25   with.

J3bdmid2

1          THE COURT:  I understand.

2          MR. BOXER:  OK.

3          MS. KRAMER:  OK.  Page 2890, lines 6 through 12 -- I

4    think it must be lines 5 through 12.

5          MR. BOXER:  Your Honor, there is a predicate about not

6    recalling the list, but then there is a question about

7    remembering that Mr. Whittle had the flu.  Actually, there was

8    an email to memorialize that fact as well in evidence.  I

9    appreciate their cross-examining him about what he does and

10   doesn't remember, but that is not a question and answer about

11   the list.

12         MS. KRAMER:  This continues the same line of

13   cross-examination, your Honor, where on page -- the prior page,

14   Government Exhibit 754, the email about with the list attached

15   was displayed, and there was further questioning about not --

16   the defendant's claim that he did not recall the list.

17         THE COURT:  Let me just make sure.  Which day is that?

18         MS. KRAMER:  Which day of testimony, your Honor?

19         THE COURT:  Yes.

20         MS. KRAMER:  This is March 5th.

21         THE COURT:  And the disputed page is which one?

22         MS. KRAMER:  2890.

23         MR. BOXER:  6 to 12, your Honor.

24         THE COURT:  OK.

25         MR. BOXER:  5 to 12.

J3bdmid2

|   |   |
|---|---|
| 1 | THE COURT:  Before that, which ones do you agree? |
| 2 | MR. BOXER:  We agree on everything.  We have no |
| 3 | dispute before that. |
| 4 | THE COURT:  Right.  But how many pages going before |
| 5 | that are you including? |
| 6 | MS. KRAMER:  Sorry.  Where is our copy?  Right here? |
| 7 | (Pause) |
| 8 | Sorry, your Honor.  Our designations of the cross -- |
| 9 | we found it, OK.  We had passed it around. |
| 10 | (Pause) |
| 11 | So we have some sections of the cross, your Honor, |
| 12 | that are on the subject of the same email beginning on page |
| 13 | 2883, lines 7 through 2884, line 15. |
| 14 | THE COURT:  OK. |
| 15 | MS. KRAMER:  And there is no dispute about that. |
| 16 | Then -- |
| 17 | THE COURT:  Right. |
| 18 | MS. KRAMER:  -- page 2887, lines 4 through 12. |
| 19 | THE COURT:  Right. |
| 20 | MS. KRAMER:  Then 2889, line 13, through 2890, line 17 |
| 21 | encompasses the portion that we were just discussing. |
| 22 | THE COURT:  Got it. |
| 23 | MR. BOXER:  Ours is 2890, 5 to 12 is what we object |
| 24 | to, your Honor. |
| 25 | THE COURT:  6 to 12? |

J3bdmid2

1          MR. BOXER:  It is really 5 because the question would

2     be added.

3          THE COURT:  Yes.  I mean, I'm fine excluding that.

4          MS. KRAMER:  OK.  So we should take out lines 5

5     through 12, your Honor?

6          THE COURT:  Yes.

7          MS. KRAMER:  OK.  Then that's it for Middendorf's

8     testimony.

9          We turn to Tom Whittle's.  The first page is 1803.

10          This is February 26th.

11          THE COURT:  Yes.

12          MS. KRAMER:  So, we had marked starting line 12 on

13     1803 through line 25, and the defendant objects to the

14     inclusion of that.  From our perspective, the reason we

15     designated it as responsive is it includes the May 2015 list.

16          MR. BOXER:  It is his general testimony about illegal

17     activity, he doesn't reference the list, and that's why we

18     don't think it is responsive to the jury's question.

19          THE COURT:  I would exclude it.

20          MS. KRAMER:  OK.  The next one, your Honor, is page

21     1859.  And there is a dispute about lines 1859, line 13,

22     through 1860, line 2.  And to put this in context, your Honor,

23     the designation as responsive to the jury's note begins on page

24     1853, line 18, and encompasses all of page 1854, all of page

25     1855 except for the objection and overruled, all of page 1856,

J3bdmid2

the same; all of page 1857, and then page 1858 through line 11,

and then starting again at 1858, line 22, continuing through

1859, line 8, and then picking up with 1859, line 13 through

1860, the entirety of 1860, the entirety of 1861 minus there

was just a directive from Ms. Mermelstein to zoom into the

page, all of 1862, all of 1863, and then we continue into 1864,

line 7; 1864, line 16 through the end, minus the objection, and

through 1865, line 22.  And so in that range, the objection is

to 1859, line 13, through 1860, line 2, which I think from

looking at the testimony around it is quite clearly about the

use of the 2015 list.

MR. BOXER:  Our view, your Honor, is that is follow up

after the list and it is not related to the list.  Actually,

the question moves forward in time and asks what -- let me get

the right page -- it asks about speaking with Mr. Sweet about

conversations with engagement teams.  It doesn't mention the

list.

MS. KRAMER:  Just to be clear, your Honor, this

testimony was elicited while the witness was being questioned

about the email with the list, so it is right in the middle of

it.

THE COURT:  And the defendant does not want to include

up to line what on 1860?

MR. BOXER:  Line 2, your Honor.

MS. KRAMER:  Just to be clear, your Honor, line 2 on

J3bdmid2

```
 1    1860 is Whittle saying that he shared with Middendorf that
 2    Whittle and Sweet have discussed Sweet giving the heads up to
 3    engagement teams that were referenced in the email in which the
 4    list is shared based on the information that he had.  It is
 5    right in the heart of the matter that they're talking about.
 6              MR. BOXER:  Well, the last bit the government just
 7    mentioned is not in the question or the answer, and that's
 8    why -- I appreciate it is in the middle of the testimony, but
 9    that's why we objected to it, your Honor.
10              MS. KRAMER:  Your Honor, to say that something is not
11    in single question and in a single answer and therefore is not
12    responsive to the jury's note obviously is inconsistent with
13    the approach that all the parties have taken to going through
14    the transcript and providing testimony about the list.  This is
15    about the list.  I believe the exhibit was displayed for the
16    witness while this question was being asked.  And it is about
17    the fact that Whittle and Middendorf discussed that Sweet was
18    sharing this information with others.  It is exactly responsive
19    to the question that's been asked.  And the fact that they were
20    using the list is part of their testimony about the list.
21              THE COURT:  So this is talking about the reason --
22    sharing with these individuals the reason the PCAOB selected
23    them.  Remind me what point that was going to.
24              MS. KRAMER:  I'm sorry, your Honor.  I'm not sure I
25    understand your question.
```

J3bdmid2

1          THE COURT:  "Did you have any conversations with Sweet

2     about him speaking to engagement teams to share with them the

3     reason they had been selected?"  What is that talking about?

4          MS. KRAMER:  So they could prepare for the first

5     meeting, your Honor, by virtue of having the heads up on the

6     rationale that was part of the list that Sweet had taken.  So

7     when Sweet sends the email with the list that Whittle then

8     sends to Middendorf, Sweet has said in that email, you know,

9     let me know if you want me to talk to these other teams about

10     the reason they were picked, the teams on the list, as I have

11     with these other three.

12          THE COURT:  I think it is fairly encompassed within

13     the request.

14          MS. KRAMER:  The next thing, your Honor, are a few

15     requests from the defense to add some portions, one of which we

16     have agreed to, and the only one that I think is in dispute is

17     on page 2055.  And this, your Honor, just so you are aware, I

18     don't know what transcript you are looking at, but apparently

19     there was a pagination problem with the transcript from this

20     day so that all of us seem to have two versions, one with the

21     correct pagination and one with incorrect pagination.

22          So what day was this?

23          THE COURT:  February 27.

24          MR. BOXER:  Correct.

25          MS. KRAMER:  Yes.  February 27.  So 2055, your Honor,

J3bdmid2

beginning at line 21, and continuing through 2056, line 6.  On

an incorrect version this may appear in pages 2008 and 2009,

but we understand the corrected version is on these two pages.

And defendant Middendorf had requested the inclusion of this.

It's as you may be able to see from the context, that the

defendant was being asked about the February 2017 list and then

one question was asked to compare it to the May 2015 list.  And

then the next question, line 25 on page 2055, which was, "You

were totally shocked about what you had received, correct?"

relates to the 2017 list.  So, we object to this as not about

the May 2015 list.

          THE COURT:  So is there a portion around here that you

are agreeing to put in?

          MS. KRAMER:  No, your Honor.  That was on a different

page that we have agreed to and not brought to the Court's

attention.

          MR. BOXER:  I think as counsel just acknowledged, your

Honor, it refers to the 2015 list.  I think the note requested

transcripts of Middendorf and Whittle regarding the 2015 list,

and in the question is reference to the list of May 2015.

          THE COURT:  So where are you --

          MR. BOXER:  I am starting on line 21.  The answer is,

"It was different."

          THE COURT:  Wait a second.

          So you are -- which page are you on?

J3bdmid2

1              MR. BOXER:  2055.

2              THE COURT:  Line 21?

3              MR. BOXER:  Correct.

4              The question itself references the May 2015 list, and

5       that's why we wanted to add it.

6              THE COURT:  So you want 21 through --

7              MR. BOXER:  We think it continues until line 6 on the

8       next page, because it, again, reflects the May of 2015 that the

9       audits were not open, so it is continuing to draw the

10      distinction between the May 2015 list and February 2017 list.

11      So since that whole section does relate to the 2015 list, by

12      definition of the government's questions, we thought 2055, line

13      21, through 2056, line 6 should be included.

14             MS. KRAMER:  So, your Honor, we would -- well, that --

15      we would not object to 2055, line 21, through 2055, line 24.

16      And we have highlighted that on the screen, your Honor.  That

17      is the only question and answer that has any reference

18      whatsoever to May 2015.

19             THE COURT:  Excepting line 5 and 6 of the following

20      page.

21             MS. KRAMER:  Then line 5 and 6 of the following page,

22      your Honor.  But the "You were totally shocked by what you had

23      received" relates only to February 2017.  And "That's because

24      the audits were so open, right?" that relates only to

25      February 2017.  It's only lines 21 through 24 and then lines 5

J3bdmid2

1    and 6 that makes mention of the 2015 list.  So we won't object

2    to those lines coming in, but the intermediate lines about 2017

3    should not.  They are just not responsive to the note.

4           MR. BOXER:  I think it provides the context for what

5    happens on line 5 and 6.  I appreciate that the few lines in

6    the middle are about the 2017 list for certain, but the way the

7    government asks the question on line 21, I think it is relevant

8    to the previous question.

9           MS. KRAMER:  There is no context that is needed, your

10   Honor.  Line 21 says, "The lists were different, right?  The

11   defendant says, "It was different."  Then if the next question

12   the jury sees is that, "In May 2015, the audits were not open,

13   right?  That's correct." there is no context that's missing

14   from that, and what is excised is the defendant's statement,

15   standing alone, that he was shocked by what he had received in

16   2017, which just doesn't have anything to do with their note.

17          THE COURT:  I think I include that section, including

18   the two parts that I think arguably provide a context.

19          Anything else?

20          MS. KRAMER:  No, your Honor.

21          So we'll prepare the redacted versions.  We'll just

22   white out everything on the pages that we're providing, and

23   we'll just provide the pages that include the testimony that we

24   have agreed to, show it to defense counsel.

25          THE COURT:  OK.  And that will be Court Exhibit 3.

J3bdmid3

1          MR. BOXER:  That is what I was just going to suggest.

2     That will be a Court Exhibit?

3          THE COURT:  Court Exhibit 3, yes.

4          MR. BOXER:  Thank you, your Honor.

5          THE COURT:  And you could give me a copy for the file,

6     and then I guess we will just give one copy to the jury.

7          MR. BOXER:  Thank you, your Honor.

8          THE COURT:  OK.  Thank you.

9          (Recess awaiting jury verdict)

10          (3:38 p.m., jury not present)

11          THE COURT:  We've received two notes from the jury,

12     the second of which is an indication that it's reached a

13     verdict on all counts.

14          Just for the record, I'll note, prior to that, at

15     12:40, during lunch, or around the time of lunch, we received a

16     note, which I've marked Court Exhibit No. 4, to Mr. Hampton,

17     that just says:

18          "Dear Mr. Hampton, how can I obtain a letter stating

19     that I attended jury duty today, 3/11/19, from jury

20     administration in 9A?  They close at 4 p.m. and I cannot get

21     there.

22          "Thanks.

23          "Loretta Lestrange."

24          And that's been marked Court Exhibit 4.

25          We have a standard letter just indicating that someone

J3bdmid3                    Verdict

1    is on jury duty and they can show it to their employer.  So,

2    Mr. Hampton provided her with that.

3          Then at 3:11 p.m. today we received a note, which I've

4    marked Court Exhibit 5, that says:  "We have reached a verdict

5    on all counts."

6          Signed, the Foreperson, Mr. Danko

7          So, I propose to bring in the jury.

8          MS. KRAMER:  Yes, your Honor.

9          (3:41 p.m., jury present)

10         THE COURT:  Please be seated.

11         Good afternoon, ladies and gentlemen.

12         JURORS:  Good afternoon, your Honor.

13         THE COURT:  I received a note from the Foreperson,

14   Juror No. 3, Mr. Danko.

15         Am I saying that right?

16         THE FOREPERSON:  Yes.

17         THE COURT:  And it says, "We have reached a verdict on

18   all counts."

19         Mr. Danko, you are the Foreperson?

20         THE FOREPERSON:  Yes, your Honor.

21         THE COURT:  And is it true that you have reached a

22   unanimous verdict on all counts?

23         THE FOREPERSON:  Yes.

24         THE COURT:  Would you please hand the verdict form to

25   Mr. Hampton.

J3bdmid3                          Verdict

1          (Pause)

2              THE COURT:  And the Clerk will take the verdict.

3              THE CLERK:  OK.  Will the Foreperson please stand.

4          How do you find on Count One, conspiracy to defraud

5     the Securities and Exchange Commission, as to defendant David

6     Middendorf?

7              THE FOREPERSON:  Not guilty.

8              THE CLERK:  How do you find on Count One, conspiracy

9     to defraud the Securities and Exchange Commission, as to

10    defendant Jeffrey Wada?

11             THE FOREPERSON:  Not guilty.

12             THE CLERK:  Count Two, how do you find on conspiracy

13    to commit wire fraud as to defendant David Middendorf?

14             THE FOREPERSON:  Guilty.

15             THE CLERK:  Count Two, how do you find on conspiracy

16    to commit wire fraud as to defendant Jeffrey Wada?

17             THE FOREPERSON:  Guilty.

18             THE CLERK:  Count Three, wire fraud 2015.

19         How do you find as to defendant David Middendorf?

20             THE FOREPERSON:  Guilty.

21             THE CLERK:  Count Four, wire fraud 2016.

22         How do you find as to defendant David Middendorf?

23             THE FOREPERSON:  Guilty.

24             THE CLERK:  Count Four, wire fraud 2016.

25         How do you find as to defendant Jeffrey Wada?

J3bdmid3                          Verdict

1              THE FOREPERSON:  Guilty.

2              THE CLERK:  Count Five, wire fraud 2017.

3         How do you find as to defendant David Middendorf?

4              THE FOREPERSON:  Guilty.

5              THE CLERK:  Count Five, wire fraud 2017.

6         How do you find as to defendant Jeffrey Wada?

7              THE FOREPERSON:  Guilty.

8              THE COURT:  Thank you.  You may be seated.

9         And the Clerk will poll the jurors.

10             THE CLERK:  Ladies and gentlemen of the jury, please

11   listen to your verdict as it stands recorded.

12        Count One, conspiracy to defraud the Securities and

13   Exchange Commission, as to defendant David Middendorf, you

14   found guilty.

15             THE COURT:  No.

16             THE CLERK:  As to defendant -- I'm sorry.  Not guilty.

17        As to defendant Jeffrey Wada, you found not guilty.

18        Count Two, conspiracy to commit wire fraud, you found

19   as to defendant David Middendorf not guilty.

20             THE COURT:  No.

21             THE CLERK:  I'm sorry.  I messed that one up.  I

22   apologize to everyone.

23        Guilty.

24        Count Two, conspiracy to commit wire fraud, as to

25   defendant Jeffrey Wada, you found guilty.

J3bdmid3                    Verdict

1              Count Three, wire fraud 2015, you found as to

2      defendant David Middendorf guilty.

3              Count Four, wire fraud 2016, you found as to defendant

4      David Middendorf guilty.

5              Count Four, wire fraud 2016, you found as to defendant

6      Jeffrey Wada guilty.

7              Count Five, wire fraud 2017, you found as to defendant

8      David Middendorf guilty.

9              Count Five, wire fraud 2017, you found as to defendant

10     Jeffrey Wada guilty.

11             Juror No. 1, Hannah Schumacher, is that your verdict?

12             JUROR:  Yes.

13             THE CLERK:  Juror No. 2, Cheryl Kennedy, is that your

14     verdict?

15             JUROR:  Yes.

16             THE CLERK:  Juror No. 3, John Danko, is that your

17     verdict?

18             JUROR:  Yes.

19             THE CLERK:  Juror No. 4, Ferdinand Rivera, is that

20     your verdict?

21             JUROR:  Yes.

22             THE CLERK:  Juror No. 5, Loretta Lestrange, is that

23     your verdict?

24             JUROR:  Yes.

25             THE CLERK:  Juror No. 6, Evelyn Maldonado, is that

J3bdmid3                        Verdict

1    your verdict?

2              JUROR:  Yes.

3              THE CLERK:  Juror No. 7, Michelle Lewis, is that your

4    verdict?

5              JUROR:  Yes.

6              THE CLERK:  Juror No. 8, Elizabeth Reagan, is that

7    your verdict?

8              JUROR:  Yes.

9              THE CLERK:  Juror No. 9, Robert Gadson, is that your

10   verdict?

11             JUROR:  Yes.

12             THE CLERK:  Juror No. 10, Alex Jonah-Danquah, is that

13   your verdict?

14             JUROR:  Yes.

15             THE CLERK:  Juror No. 11, Regina Dwumah, is that your

16   verdict?

17             JUROR:  Yes.

18             THE CLERK:  Juror No. 12, Erin Yokoi, is that your

19   verdict?

20             JUROR:  Yes.

21             THE CLERK:  Jury polled.  Verdict unanimous.

22             THE COURT:  Thank you, ladies and gentlemen.

23             I'll ask counsel, is there any reason the jury may not

24   be released at this time?

25             MS. MERMELSTEIN:  No, your Honor.

J3bdmid3                        Verdict

1              MR. BOXER:  No, your Honor.

2              MR. COOK:  No, your Honor.

3              THE COURT:  All right.  Ladies and gentlemen of the

4    jury, I want to thank you for your service as jurors in this

5    case.  Your service is now completed after -- in week five.

6    This was a relatively long trial.  There was a lot of evidence.

7    You heard extensive types of evidence.  You heard extensive

8    closing arguments of the parties.  You paid attention.  And I

9    want to thank you for the role you played in this matter.

10             There are a lot of different systems throughout the

11   world in terms of criminal justice systems and ours is fairly

12   unusual.  There are a lot of systems where a government

13   bureaucrat or someone in the government decides these cases

14   behind closed doors.  We do it with a jury, people picked from

15   the community, who are citizens, essentially at random to

16   decide criminal cases as well as civil cases.  You've made a

17   significant sacrifice by being here for a trial that lasted

18   over four weeks, and I want to thank you for your

19   attentiveness, your patience, and your hard work in reaching a

20   unanimous verdict with each other in this case.

21             Now, what I've said in the past about your not being

22   able to discuss the case no longer applies.  You are permitted

23   to discuss the case now if you want to.  You are also permitted

24   not to discuss the case.  So sometimes the lawyers or someone

25   else may want to talk to you about the case, and it is up to

1    you whether you do that.  You are welcome to simply say, no,

2    I'd rather not talk about it.  It is also permissible for you

3    to talk to them about it.

4          There is one thing I ask, though, out of respect for

5    your fellow jurors and that's that you not reveal the

6    deliberations themselves.  You are welcome to talk about your

7    own reactions to witnesses or arguments or anything like that.

8    But because some jurors might not want to talk about what they

9    thought and what they said about the evidence in the trial, you

10   really shouldn't be revealing what other people said in the

11   deliberations.  So, you are welcome to talk what about what you

12   thought, your impressions, but please do not reveal what other

13   people said in the deliberations.

14         So with that, I am going to release you.  Your service

15   here is done, and I want to thank you.

16         I am going to ask you to go back to the jury room.

17   Leave your notes here.  We will be destroying, shredding all

18   the notes.  You shouldn't be taking anything with you from the

19   jury room other than your own things that you brought.

20         I am happy to come back and speak to you for a few

21   minutes.  I will be back there in about five or ten minutes, if

22   want to wait around, just to thank you for your service and ask

23   you about whether there is anything we can do to make the

24   experience more pleasant for jurors in the future.  So if you

25   want to wait back there about five minutes, I will come back

1    just to thank you.  If not, you are free to leave.

2           So with that, I want to thank you on behalf of the

3    court, on behalf of the parties for your patience and your hard

4    work in reaching this verdict and sitting through the trial.

5    Thank you very much.

6           (Jury not present)

7           THE COURT:  You may be seated.

8           Anything we need to address at this time?

9           MS. KRAMER:  Does your Honor want to schedule

10   sentencing now?

11          THE COURT:  I think we can.  You all have any thought

12   about sentencing date?  Do you have any proposal in terms of

13   timing?

14          MR. BOXER:  I think we were going to ask for more time

15   to make our post-trial motions.  I don't know if that is what

16   Mr. Weddle was going to address.

17          MR. WEDDLE:  That is right, your Honor.  I was going

18   to propose 30 days to make post-trial motions.

19          THE COURT:  OK.

20          MS. KRAMER:  That is fine, your Honor.  It seems that

21   we could still schedule the post-trial motions and sentencing

22   so that it is on the calendar.

23          THE COURT:  That's fine.  Why don't we schedule

24   sentencing as well as -- post-trial motions will be due in one

25   month from today.  And we can schedule sentencing -- how much

J3bdmid3                          Verdict

1    time does the government need to respond?

2                MS. KRAMER:  So I think that most of the government

3    team is going to be away the week of April 20th, and so if they

4    are due in one month and it overlaps that week, then I think we

5    would need three weeks to respond, your Honor.

6                THE COURT:  All right.  So let's say April 12th for

7    defendants' post-trial motions and then government response

8    May 3rd, which is three weeks.

9                Does that work?

10               MS. KRAMER:  Yes, your Honor.  Thank you.

11               THE COURT:  And did you want to -- defendants want to

12   file a reply?

13               MR. BOXER:  Yes, your Honor.

14               THE COURT:  May 17th.

15               And sentencing in July?

16               MR. WEDDLE:  Your Honor, I was going to propose that

17   perhaps it would make sense to delay the sentencing until after

18   the trial of Mr. Britt, which I think is scheduled to take

19   place in September.

20               THE COURT:  I think it is October.  It is late

21   October.

22               MS. KRAMER:  That is just too far out, in our view,

23   your Honor, and there is not a reason to delay the sentencing

24   until after that trial.

25               THE COURT:  I think I would like to go ahead and set

J3bdmid3                         Verdict

1    sentencing –– we may need to delay it, depending on the

2    motions, but I think at this point I would like to set it for

3    rather than late October, waiting until then, I would rather

4    set it for July or August, I think.

5              MS. KRAMER:  Your Honor, could we aim for July so that

6    if there is a delay, we are still not into the fall?

7              MR. BOXER:  Your Honor, I am scheduled to be away the

8    last week, perhaps 10 days in July.  So maybe we could schedule

9    it for early August?

10             THE COURT:  How about August 9th?

11             (Pause)

12             Is that OK?

13             MS. KRAMER:  Yes, your Honor.

14             MR. COOK:  Yes.

15             MR. BOXER:  Yes.

16             THE COURT:  August 9th, 11 a.m.

17             MS. KRAMER:  Is that for both defendants, your Honor?

18             THE COURT:  Yes.  We'll do 11 o'clock and 12,

19    11 o'clock for Mr. Middendorf and 12 o'clock for Mr. Wada.

20             And written submissions will be due two weeks before

21    sentencing for defendants and one week before for the

22    government.

23             All right?  Anything else for today?

24             MS. KRAMER:  No, your Honor.

25             THE COURT:  Anything else?

J3bdmid3                    Verdict

1            MR. BOXER:  No, your Honor.

2            MR. COOK:  No, your Honor.

3            THE COURT:  All right.  Thank you, everyone.

4            We are adjourned.

5            (Adjourned)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25